MARIA MONTGOMERY, Plaintiff-Appellant, v. OLA ROUDEZ, Defendant-Appellee.

First District (3rd Division)   No. 85—0111

Opinion filed May 13, 1987.

Jean P. Kamp and Joanne E. Brown, both of Edwin F. Mendel Legal Aid Clinic, of Chicago, for appellant.

Joel S. Ostrow, of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Maria Montgomery, appeals from a decision of the circuit court of Cook County awarding custody of her son, Anthony Montgomery a/k/a Rodney (hereinafter Anthony), to nonparent defendant, Ola Roudez, pursuant to the Illinois Marriage and Dissolution of Marriage Act (IMDMA) (Ill. Rev. Stat. 1983, ch. 40, par. 101 *et seq*). On appeal, plaintiff argues that (1) the trial court applied an incorrect standard in determining that permanent custody of Anthony should be granted to defendant, (2) the trial court's award of custody was against the manifest weight of the evidence, and (3) she was denied due process and equal protection of the law. We affirm.

The record reflects that on August 11, 1982, at the age of 14, plaintiff gave birth to Anthony. At that time, plaintiff was a ward of the Illinois Department of Children and Family Services. Thereafter, plaintiff relinquished the care and custody of Anthony to defendant, plaintiff's great-aunt.

After being discharged from the hospital, plaintiff initially lived with her father and his girlfriend and then resided in a series of foster homes. In October of 1982, plaintiff contacted police officers Gawelz and Brownfield of the Chicago police department in an apparent attempt to regain custody of Anthony. Officer Gawelz testified that plaintiff indicated she wanted her baby back so that she could go on public aid and have her own apartment. Officer Brownfield stated that plaintiff told him she needed to regain custody of Anthony because she was not eligible to receive public aid without him.

Thereafter, on April 27, 1983, plaintiff filed a *habeas corpus* proceeding seeking physical custody of Anthony. Defendant subsequently filed a counterpetition for custody of Anthony pursuant to section 601(b)(2) of the IMDMA (Ill. Rev. Stat. 1983, ch. 40, par. 601(b)(2)). The court consolidated the actions, and plaintiff filed an answer to the counterpetition for custody. A guardian *ad litem* was then appointed for Anthony.

Following a lengthy trial involving the testimony of the parties, several social workers, a psychiatrist, and the two Chicago police officers, the trial court found plaintiff unfit to be awarded custody of Anthony. The trial court further determined that it was in Anthony's best interest to remain in the custody of defendant and her family. Defendant was then awarded permanent custody of Anthony. This appeal followed.

■ Plaintiff initially questions defendant's standing to maintain

an action for custody of Anthony. While plaintiff has failed to articulate an argument on this issue, we believe it should be discussed before the merits of this appeal are addressed. Defendant brought her counterpetition for custody of Anthony pursuant to section 601 of the IMDMA. Section 601 requires that a nonparent must first satisfy a standing requirement to be considered for legal custody of a child. This standing requirement is set forth in section 601(b)(2) and states:

Sec. 601 Jurisdiction—Commencement of Proceeding.

\* \* \*

(b) A child custody proceeding is commenced in the court:

\* \* \*

(2) by a person other than a parent, by filing a petition for custody of the child in the county in which he is permanently resident or found, *but only if he is not in the physical custody of one of his parents.* (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 40, par. 601(b)(2).)

Thus, nonparents must first show that the child is not in the physical custody of one of his parents before they may be considered for legal custody of the child. Once this standing requirement is met, the question of legal custody is decided under the best interest of the child standard (see Ill. Rev. Stat. 1981, ch. 40, par. 602), without first having to establish parental unfitness. *In re Custody of Peterson* (1986), 112 Ill. 2d 48, 52-53, 491 N.E.2d 1150, 1152.

Here, the evidence shows that plaintiff voluntarily relinquished custody of Anthony immediately following his birth when she executed a document analogous to the final and irrevocable consent to adoption form required by the Adoption Act (Ill. Rev. Stat. 1983, ch. 40, par. 1512). The form provided that plaintiff surrendered her custodial rights over Anthony to defendant until Anthony attained the age of 18. Clearly, defendant had legal physical custody of Anthony at the time that she filed her counterpetition for custody pursuant to section 601 of the IMDMA. Additionally, no allegations of the fraud or collusion necessary to void plaintiff's relinquishment of custody and establish that defendant wrongfully had custody of Anthony were made by plaintiff, nor does the record support such a finding.

■ Plaintiff next argues that the trial court failed to consider the superior-right doctrine as set forth in the case of *In re Custody of Townsend* (1981), 86 Ill. 2d 502, 427 N.E.2d 1231, in determining that it would be in Anthony's best interest to remain in defendant's custody. We disagree.

The superior-right doctrine provides that in child-custody disputes, it is an accepted presumption that the right or interest of a natural

parent in the care, custody, and control of a child is superior to the claim of a third party. However, the doctrine is not absolute and serves only as one of several factors used by courts in resolving the controlling question of where the best interest of the child lies. A court need not find that the natural parent is unfit, or that she has forfeited her custodial rights, before awarding custody to another person if the best interests of the child will be served. *In re Custody of Townsend* (1981), 86 Ill. 2d 502, 508, 427 N.E.2d 1231, 1234; *In re Custody of Peterson* (1986), 112 Ill. 2d 48, 52-53, 491 N.E.2d 1150, 1152.

The burden is on the third party, in this case defendant, to establish good cause or reason to overcome the presumption that plaintiff, as Anthony's natural mother, has the first and superior right to the custody of her son. Therefore, as applied, the superior-right doctrine is subservient to the best interests of the child. *In re Estate of Becton* (1985), 130 Ill. App. 3d 763, 769, 474 N.E.2d 1318, 1323.

Here, counsel for plaintiff filed several pleadings and memoranda advising the court of the superior-right doctrine and its applicability to the custody determination at issue. Additionally, our examination of the record indicates that plaintiff's counsel also argued the necessity of employing the doctrine in determining the custody of Anthony at length, both during the trial and in closing arguments. We find nothing in the record to suggest that the trial court failed to properly consider the superior-right doctrine in reaching its custody determination.

■ Plaintiff next argues that the trial court's award of custody to defendant was against the manifest weight of the evidence. In support of this argument, plaintiff initially contends that the evidence adduced at trial does not support a finding of unfitness on her part. We agree.

Plaintiff has never had physical custody of Anthony for any extended period of time. However, while plaintiff's present situation is a result of her own voluntary actions, a finding of unfitness cannot be based solely on a lack of continuous contact between a parent and her child. Moreover, we have examined the interaction between plaintiff and Anthony and find nothing in the record to support a finding of parental unfitness on plaintiff's part. Clearly, a parent is not unfit in the usual sense of the word because she has faults or would be found lacking as an ideal parent.

■ However, a finding of unfitness is not required in either a *habeas corpus* proceeding or in a cause of action brought pursuant to section 601(b)(2) of the IMDMA. Rather, the standard to be applied in

guardianship and custody cases is the best interest of the child. (*In re Custody of Menconi* (1983), 117 Ill. App. 3d 394, 398, 453 N.E.2d 835, 839.) Fitness of a parent is only one of the factors to be considered in determining how the best interests of a child will be served. (*In re Custody of Henkins* (1983), 117 Ill. App. 3d 666, 669, 453 N.E.2d 78, 80.) Therefore, a finding of unfitness on plaintiff's part was not necessary to award defendant custody of Anthony. See *In re Custody of Peterson* (1986), 112 Ill. 2d 48, 53, 491 N.E.2d 1150, 1152.

██ █ Plaintiff also argues that her superior right to custody of Anthony was not overcome by any good cause or reason sufficient to require an award of custody to defendant. Defendant, however, contends that the trial court, while recognizing plaintiff's presumptive right to custody, was appropriately guided by the best interests of Anthony and that the evidence rebutted plaintiff's right to custody.

Our review of the trial court's decision that the best interest of Anthony would be served by awarding custody to defendant must be guided by the fact that the trial judge was in the best position to observe the parties and their demeanors while testifying. Such a finding should not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re Estate of Becton* (1985), 130 Ill. App. 3d 763, 769, 474 N.E.2d 1318, 1323.

There are many factors to be considered in determining which custodial arrangement will serve the best interests of a child. Among the factors applicable here are: (1) the wishes of the child's parent as to his custody, (2) the sufficiency and stability of the respective parties' homes and surroundings (see *In re Estate of Becton* (1985), 130 Ill. App. 3d 763, 769, 474 N.E.2d 1318, 1324), (3) the interaction and interrelationship of the child to his parent and to any other person who may significantly affect the child's best interest, (4) the child's adjustment to his home, and (5) the mental and physical health of the individuals involved. (Ill. Rev. Stat. 1983, ch. 40, par. 602.) On appeal, we must view the evidence introduced at trial and the inferences drawn therefrom in the light most favorable to the party prevailing below. (*In re Estate of Becton* (1985), 130 Ill. App. 3d 763, 769, 474 N.E.2d 1318, 1324.) Applying this rule, we cannot conclude that the trial court's decision was against the manifest weight of the evidence.

The evidence shows that when plaintiff sought police assistance to regain custody of Anthony, she told two police officers that she wanted Anthony back so she could receive public aid and have her own apartment. Moreover, at the time of the custody proceeding, plaintiff was a ward of the State with no permanent home. In fact, plaintiff was ready to be released from Maryville Academy, a highly

structured group care facility, where she had been placed by the Illinois Department of Children and Family Services. The evidence also indicates that plaintiff has failed to demonstrate any continuous pattern of maturity or stability in her life or an ability to deal independently with responsibility, personal finances, social problems, or parenting. It is clear that when plaintiff encounters emotional or interpersonal relationship problems not to her liking, she exhibits both avoidance and runaway behavior.

The record further reflects that based on evaluations of plaintiff, individually and in conjunction with Anthony and others, it was the opinion of several social workers and a psychiatrist that plaintiff lacked sufficient maturation to act as a complete and full-time parent. Instead, plaintiff would require the care and guidance of a suitable adult to properly provide a stable physical and emotional environment for Anthony. The record also indicates that to remove Anthony from his present environment would have a devastatingly negative impact on his emotional and physical development.

Based on the aforementioned evidence, the trial court was confronted with the choice of granting custody of Anthony either to plaintiff, a teenager with no permanent residence, no continuity in education, no employment, no financial security, and with only the possibility of future enrollment in a suitable care facility, or to defendant, an emotionally secure adult with a stable home environment and the financial capabilities to care for Anthony's medical and educational needs and who had raised Anthony from his birth through early childhood. We cannot say that the trial court's decision that it was in Anthony's best interest to remain in the custody of defendant was against the manifest weight of the evidence.

■ Additionally, we find no error in the trial court's consideration of the relative economic postures of the parties. While mere financial disparity is insufficient to deprive a natural parent of the custody of her child, the right of a parent to care for her child is associated with concomitant responsibilities. (*In re Estate of Becton* (1985), 130 Ill. App. 3d 763, 770, 474 N.E.2d 1318, 1324.) Therefore, the economic positions of the parties are a factor that must be considered in determining the best interests of the child, especially where one party has no visible means of support. We find nothing in the record to support plaintiff's contention that the trial court awarded custody of Anthony to defendant solely on the basis that plaintiff is on public aid.

■ Plaintiff next argues that she was denied her State and Federal rights to due process. Plaintiff contends that due process requires a showing of fault on her part before she can be deprived of the cus-

tody of Anthony. We disagree.

Plaintiff was neither exposed to, nor did she suffer, a total deprivation of her parental rights. Plaintiff received a full and fair hearing to determine what custodial arrangement would be in Anthony's best interest. Plaintiff was therefore afforded the hearing to which she was statutorily entitled. (Ill. Rev. Stat. 1983, ch. 40, par. 602.) Moreover, an order of the court depriving a parent of custody of a child is a continuing order which is only *res judicata* as to facts which existed at the time the order was entered. Consequently, plaintiff has the right to petition the court for restoration of parental rights and a change of custody until such time as the court terminates all of her legal rights to Anthony. *In re S.J.K.* (1986), 149 Ill. App. 3d 663, 673, 500 N.E.2d 1146, 1154.

We likewise find no merit in plaintiff's equal protection argument. Plaintiff contends that section 602 of the IMDMA violates the doctrine of equal protection because in a custody dispute between a parent and a third party it requires a determination of what custody arrangement would be in the best interest of the child, while the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 701—1 *et seq.*) and the Adoption Act (Ill. Rev. Stat. 1983, ch. 40, par. 1501 *et seq.*) proceed under more stringent standards.

When a deprivation of equal protection is raised, any analysis made must first focus on whether there is a disparity in treatment between classes of individuals whose situations are arguably indistinguishable. (*People v. Porter* (1986), 141 Ill. App. 3d 208, 215, 490 N.E.2d 47, 52.) Contrary to plaintiff's claims, parties pursuing remedies under the Juvenile Court Act, the Adoption Act, and the IMDMA are not similarly situated. A proceeding under the Adoption Act between a third party and a nonconsenting parent involves a total termination of parental rights and requires a showing of parental unfitness. A proceeding pursuant to the Juvenile Court Act is instigated to remove a child from the custody of a parent for his safety and well being and mandates a showing that the minor child is delinquent, in need of supervision, neglected, or dependent. However, a proceeding filed pursuant to section 602(b)(2) of the IMDMA is brought by a third party to obtain legal custody of a child already in her physical custody and control, and it is predicated upon a determination of the child's best interests. A third party has standing under section 601(b)(2) of the IMDMA only upon a showing that the child was voluntarily placed in her control. *In re Custody of Peterson* (1986), 112 Ill. 2d 48, 53, 491 N.E.2d 1150, 1152.

Initially, section 602(b)(2) of the IMDMA does not create a suspect

classification. Therefore, it will be upheld if it is rationally related to the achievement of a legitimate State interest. (*Searle Pharmaceuticals, Inc. v. Department of Revenue* (1986), 140 Ill. App. 3d 248, 254, 488 N.E.2d 661, 664.) The decision to voluntarily surrender a child to a third party impacts both emotionally and psychologically on the child. Clearly, when a natural parent subsequently decides to regain custody of the child, the State has an obligation to protect the emotional development of the child and insure some continuity in the child's environment. An examination of what action should be taken in such a situation focuses on the child's best interests. Here, by voluntarily relinquishing custody of Anthony, plaintiff placed herself within the class of natural parents subject to having custody of their child determined pursuant to section 602(b)(2) of the IMDMA. We believe that the best interest of the child standard is rationally related to the goals section 602(b)(2) seeks to promote and the interests it strives to protect.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

McNAMARA, P.J., and WHITE, J., concur.