*In re* MARRIAGE OF LINDA B. FAHY, Petitioner-Appellee, and MICHAEL J. FAHY, Respondent-Appellant.

First District (3rd Division)  No. 1—88—3039

Opinion filed January 9, 1991.

Michael J. Fahy, of Chicago, appellant *pro se.*

No brief filed for appellee.

JUSTICE FREEMAN[1] delivered the opinion of the court:

On September 6, 1985, petitioner, Linda B. Fahy, filed a petition for dissolution of her marriage to respondent, Michael J. Fahy, a licensed attorney, on the grounds of mental cruelty. On June 13, 1988, the trial court entered a judgment dissolving the parties' marriage and, *inter alia*, awarding custody of their four minor children[2] to petitioner and requiring respondent to pay child support. Respondent appeals from: (1) the judgment of dissolution; (2) the award of attorney fees to petitioner under the Illinois Marriage and Dissolution of Marriage Act (the Dissolution Act) (Ill. Rev. Stat. 1987, ch. 40, par. 508); (3) the award of partial attorney fees to petitioner as a sanction against respondent under section 2—611 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—611); and (4) the denial of his post-trial motions including a motion for sanctions under section 2—611. Petitioner has failed to file a brief in this court. Nonetheless, we must pass upon the merits of respondent's appeal before disposing of it one way or another. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

Given the many points of error raised by respondent, we will discuss the facts of this case only as they are relevant to a disposition of those issues.

I

Respondent first contends that the trial court erred in holding him "in default" with respect to petitioner's post-trial petitions for attorney fees under the Dissolution Act and for sanctions under section 2—611 and, as a result thereof, in entering in petitioner's favor a "judgment on the pleadings" with respect to the former petition and a general judgment with respect to the latter petition. We agree.[3]

On July 26, 1988, the trial court held a hearing on those peti-

---

[1]Justice Freeman authored this opinion prior to his election to the Illinois Supreme Court.

[2]Five children were born of the parties' marriage. The fifth and oldest reached majority before entry of the judgment of dissolution.

[3]As with his other points of error, respondent asserts multiple grounds for the invalidity of the awards of fees and sanctions. However, on all the points of error raised, including those awards, we will address the minimum grounds warranting a reversal of the trial court's rulings.

tions.[4] During the hearing, the following colloquy occurred with respect to respondent's written responses to the petitions, which the record reflects respondent filed on the day of the hearing, in violation of the June 13, 1988, order:

"THE COURT: [To petitioner's attorney:] Did you receive a copy of [respondent's] answer?

[PETITIONER'S ATTORNEY:] Yes.

THE COURT: *** Do you want to respond? We don't have an issue here. There is a petition for attorneys fees 2—611 [*sic*] and you haven't filed an answer to it.

[PETITIONER'S ATTORNEY:] I have received a copy of his response. I don't think he has ever filed. He entitled it 'Objection to motion for attorneys fees'.

THE COURT: I have a copy of it. Now, where is the issue? You haven't filed any answer here at all. What kind of a pleading is this? This is an answer?

[RESPONDENT:] It is a response to her motion, to be her motion [*sic*].

THE COURT: *** Now you are not at issue here and this objection is not—what kind of motion is it? You aren't at issue at all on this.

[RESPONDENT:] It is her motion, not mine. I object to it and ask it be denied.

THE COURT: What kind of motion is this?

[RESPONDENT:] It is an objection to a motion. Response. Objection.

THE COURT: Okay. And you are going to stand on that?

[RESPONDENT:] Oh, yes, sir.

THE COURT: [To petitioner's attorney:] Do you have a motion ***?

[PETITIONER'S ATTORNEY] Yes. I am asking for judgment on the pleading.

THE COURT: There will be a judgment on the pleading under [section] 508 [of the Dissolution Act].

[RESPONDENT:] Can I respond to that? ***

* * *

THE COURT: How do we get at issue? You are an attorney. You tell me how we get at issue. There are two petitions filed here. Under the rules what is required of you, sir?

---

[4]On June 13, 1988, the trial court had given petitioner leave to file these petitions and had given respondent 28 days, or until July 11, to respond thereto.

[RESPONDENT:] Sir, nothing, I am not required to file any written response to that, but I have done so.

THE COURT: Okay. In view of the fact that these motions were in writing and you have had an adequate time to file since June 13th and since June 13th on both of them respectively you have filed no written response. Under the rules of civil procedure and under the Supreme Court Rules you are in default. I will take these as true. So there will be a judgment for attorneys fees under [section 508 of the Dissolution Act], $10,188.50.''

The foregoing colloquy between the court, petitioner's attorney and respondent clearly reveals that, notwithstanding that respondent filed written objections to the petitions, albeit he did so in an untimely manner, the trial court held respondent "in default" on both petitions because it considered his responses insufficient at law and thus tantamount to no responses at all. In so doing, we believe the court erred manifestly.

Our research has revealed no authority allowing a trial court to find a party in default and to enter a judgment against him based on such default for the simple failure to file a response to a motion or petition seeking some relief from the court where the party appears before the court on the date set for hearing the motion or petition. Specifically, notwithstanding the court's references to the Code of Civil Procedure and supreme court rules, we find nothing in either allowing the court to do what it did in this case.

■ The only authority which we have found on the subject, Rule 2.1(d) of the Circuit Court of Cook County, while relating to motion practice in the law division of the county department thereof, strongly suggests that trial courts generally do not have authority to enter default judgments or judgments on the pleadings or comparable summary relief simply due to a failure to file a written response to a petition or motion. That rule, after, *inter alia*, allowing 28 days for the filing of an answering memorandum, provides that the "[f]ailure to file a supporting or answering memorandum shall not be deemed to be a waiver of the motion, or a withdrawal of opposition thereto, but shall be deemed to be a waiver of the right to file the respective memorandum." Thus, under this rule, the failure to file a written response to a motion within the time allowed therefor does not waive the right to contest the merits of the motion but merely the right to file a response thereafter. As such, it does not allow the entry of a default judgment on the motion due to such a failure. While this rule applies in the law division of the circuit court, we can imagine no rea-

son why it should not also apply in the other divisions of the court, including the domestic relations division.

As such, we hold that the trial court erred in finding respondent in default for failure to file responses to petitioner's petitions and, based thereon, in entering a judgment on the pleadings on the petition for attorney fees under the Dissolution Act.

In addition to asserting error in the trial court's finding him "in default" on both petitions, respondent asserts that the trial court erred in granting the petition for sanctions under section 2—611 because, having granted the petition for fees under the Dissolution Act, the grant of the former petition constituted an improper dual penalty. We agree.

In *Boltz v. Estate of Bryant* (1988), 175 Ill. App. 3d 1056, 530 N.E.2d 985, the petitioner sought damages under section 11—110 of the Code of Civil Procedure for the wrongful issuance of injunctive relief against him and attorney fees under section 2—611 for the making of false statements and the raising of spurious defenses. After concluding that the petitioner had been entitled to damages under section 11—110, the trial court declined to decide whether he was also entitled to a sanctions award under section 2—611 given that damages under the former section include attorney fees and that the petitioner would not be entitled to double damages. Moreover, the court found it insignificant that the scope of the attorney fee awards under the two sections could differ since the recoveries under each would be substantially the same. The court so reasoned because the wrongful issuance of the injunction and the subsequent attempts to dissolve it occasioned much of the petitioner's attorney fees. See also *Niemoth v. Kohls* (1988), 171 Ill. App. 3d 54, 524 N.E.2d 1085 (award of attorney fees under section 2—611 after attorney fees were awarded as a fine for contempt of court would be, in effect, a dual penalty).

■ We find the reasoning of *Boltz* dispositive here. Particularly, it cannot be denied, given the trial court's statement that it was "going to arbitrarily assess against [respondent] $3,000 in *fees* under [section] 2—611" (emphasis added) that, by so ruling, the trial court duplicated, at least partially, the award of fees under the Dissolution Act. Moreover, it is clear from the arguments of petitioner's attorney in support of both petitions that the basis of both was that, similarly to *Boltz*, petitioner's attorney fees were occasioned by respondent's alleged misconduct in contesting the petition for dissolution. This fact also reveals the duplication in the award of attorney fees under the Dissolution Act and the award of fees under section 2—611. The latter award was in error for this reason as well.

## II

Respondent next contends the trial court erred in applying the new section 2—611 (Pub. Act 84—1431, eff. Nov. 26, 1986 (amending Ill. Rev. Stat. 1985, ch. 110, par. 2—611)) retroactively to the answer to the petition for dissolution, which respondent filed in November 1985, by striking the pleading and holding respondent in default thereafter and by requiring respondent's attorneys, retained successively, to either sign the answer filed by respondent or withdraw from the case. We agree.

 The new section 2—611, *inter alia*, requires an attorney or a party proceeding *pro se* to sign all pleadings, motions and other papers filed with a court. The signature constitutes a certification that the signer has read the paper, that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact, is warranted by existing law or a good-faith argument for the extension, modification or reversal of existing law and that it is not interposed for an improper purpose. (Ill. Rev. Stat. 1987, ch. 110, par. 2—611.) Contrary to the belief of the trial court, the new section 2—611 is not retroactively applicable for the reason that it does not merely effect a change in procedure but, rather, imposes new obligations which did not exist under the former section 2—611. (*Ignarski v. Heublein* (1988), 171 Ill. App. 3d 830, 525 N.E.2d 995.) Also contrary to the trial court's and petitioner's attorney's belief, section 2—611 does not require an attorney or party to certify a pleading filed with the court pursuant to the language of the section. Rather, the signature of the party, alone, constitutes the certification provided for in section 2—611.

 Given the foregoing, it is clear the trial court erred in requiring respondent's original counsel to sign and certify, under section 2—611, the answer to the petition for dissolution which respondent filed in 1985. It is also clear for the foregoing reasons and an additional reason that the trial court also erred in subsequently requiring respondent's newly retained attorney to sign and certify, under section 2—611, the answer to the petition for dissolution which respondent refiled in 1987, after the trial court had struck the original answer due to the noncompliance with section 2—611. The additional reason for the invalidity of the second ruling is that respondent had filed an appearance in the case in 1985 and never withdrew that appearance. As such, when he refiled his answer to the petition for dissolution in 1987, just as when he had originally filed it in 1985, respondent was properly acting *pro se*. Therefore, by having signed and placed his address on the answer refiled in 1987, respondent fully complied with

the procedural requirements of section 2—611. As such, it was error for the trial court to thereafter also require his new counsel to sign the pleading "in accordance" with section 2—611 and to require respondent after his second counsel's withdrawal to certify the pleading in the language of section 2—611.

## III

■ Given the foregoing, we further agree with respondent that the trial court denied him due process of law when, after his second counsel was allowed to withdraw in lieu of signing the refiled answer, the court denied respondent's motion for a continuance to obtain new counsel and compelled respondent to represent himself at trial *instanter*. As Justice McCullough stated in *Illinois Educational Labor Relations Board v. Homer Community Consolidated School District No. 208* (1987), 160 Ill. App. 3d 730, 745, 514 N.E.2d 465 (McCullough, J., dissenting), *aff'd* (1989), 132 Ill. 2d 29, 547 N.E.2d 182:

> "The right of a litigant to be represented by counsel is fundamental. This right exists in civil as well as in criminal cases and is a part of the process of law guaranteed by the constitution. [Citation.] This right is a valuable one, the unwarranted denial of which is held to be a fundamental error."

## IV

Respondent next contends that the trial court erred in prohibiting him from authenticating, through a handwriting expert's analysis of checks written by petitioner, a letter which she allegedly had written to a woman with whom she was allegedly romantically involved. Respondent asserts that the letter, evidencing petitioner's alleged lesbianism, would have been extremely probative of her unfitness as the custodian of the parties' four male minor children. Specifically, respondent asserts that the trial court erred at least to the extent that it misapplied the best evidence rule to bar him from introducing petitioner's checks into evidence. Assuming, without deciding, that petitioner's involvement, whether before or at the time of trial, in a lesbian relationship bore some relevance to the issue of custody of the parties' children, as opposed to her *per se* unfitness as a custodian, we agree with respondent.

At trial, respondent sought to prove, through the testimony of a handwriting expert, that petitioner had written a letter to Pamela Spence which indicated their romantic involvement. To do so, respondent attempted to question the expert with respect to checks written by petitioner. However, petitioner objected to the use of cop-

ies of the checks and the trial court sustained the objection on the grounds of the best evidence rule. In so doing, the trial court erred.

■ As respondent notes, the best evidence rule is applicable only when the contents or terms of a writing are in issue and must be established (*People v. Pelc* (1988), 177 Ill. App. 3d 737, 532 N.E.2d 552), *i.e.*, when the truth of the contents or terms is sought to be proved. Here, respondent was not attempting to establish the truth of the contents or terms of the checks which he wished to submit to his handwriting expert for analysis. Rather, he merely intended to have the expert compare the signature of petitioner appearing thereon to the handwriting in the letter which respondent claimed petitioner had written to Spence. The trial court itself recognized this fact when, in sustaining petitioner's best evidence objection, it stated that the checks would not be admitted "for the purpose of identifying signatures." As such, the best evidence rule was not a sufficient ground upon which to deny respondent the opportunity to establish that fact.

■ With respect to his attempt to authenticate the letter, respondent further argues that the trial court erred in denying his discovery request for handwriting exemplars from petitioner. Again assuming the relevance of the facts evidenced in the letter to the issue of custody, we agree. "The broad scope of discovery permitted *** takes on particular significance in child custody disputes. As the welfare of the children is at stake, and best interest of these children [is] the paramount concern [citation], the broadest possible latitude should be accorded to a reasonable discovery request." *Burgel v. Burgel* (1988), 141 A.D.2d 215, 216, 533 N.Y.S. 2d 735, 736.

Respondent also asserts that the trial court erred in failing to deem admitted the fact that petitioner wrote the letter at issue. Respondent predicates this assertion upon petitioner's failure to conform her answer to respondent's request to admit the genuineness of the letter to the requisites of Supreme Court Rule 216(c) (107 Ill. 2d R. 216(c)). We disagree.

■ In asserting that petitioner did not, *inter alia*, specifically deny the genuineness of the letter, respondent ignores the following from her answer to the request to admit, "[Petitioner] denies that whatever said document may be *** it was never written by the Petitioner and she previously stated same when a similarly tendered document, *i.e.*, a photocopy, was tendered to her on the date her deposition was taken[.]" Prior to so stating, petitioner did state that she neither admitted nor denied that the letter was genuine. However, petitioner's immediately following denial that she wrote the letter sufficiently complied with the requirement of Supreme Court Rule 216(c).

As such, the trial court did not abuse its discretion in failing to deem admitted the genuineness of the letter.

██ As indicated above, in concluding that the trial court erred with respect to the authentication of the letter, we have assumed that petitioner's alleged past or present involvement in a lesbian relationship bears some relevance to the custody issue. Notwithstanding that assumption, upon remand, we instruct the trial court to determine what, if any, relevance such involvement actually has on that issue and to rule with respect to the letter at issue accordingly.

## V

██ Respondent next asserts the trial court erred in failing to bifurcate the trial of the issues of cause for dissolution and custody of the parties' children.

We find that, even if the trial court erred in failing to bifurcate the trial of this cause, such error was not prejudicial to respondent. We so conclude in view of our rejection below of respondent's additional contention that the trial court erred in awarding custody of the parties' four minor children to petitioner because it considered respondent's marital misconduct and financial circumstances in so doing.

## VI

Respondent next contends the trial court erred in ruling that his law license was a marital asset and in retaining jurisdiction thereover for "future determination as to distribution or apportionment." We agree.

In *In re Marriage of Weinstein* (1984), 128 Ill. App. 3d 234, 470 N.E.2d 551, the court addressed the issue whether a medical degree and license to practice surgery earned during a marriage were marital property subject to distribution under the Dissolution Act. In so doing, the court noted that, regardless whether they had concluded that a professional degree or license was or was not marital property, the States that had considered the issue nevertheless agreed that the contributing spouse should be entitled to some form of compensation for the financial support provided the student spouse. *Weinstein*, 128 Ill. App. 3d at 241.

The court further noted that the majority of States, which had decided the issue in the negative, used three alternative methods to award such compensation: (1) considering the supporting spouse's past contributions and the student spouse's resulting increased earning capacity in the distribution of marital assets and liabilities; (2) awarding

some form of maintenance or alimony; or (3) allowing a separate monetary award based on unjust enrichment or some other equitable principle. *Weinstein*, 128 Ill. App. 3d at 242-43.

The court then held that a professional degree and license are not marital property in Illinois and approved the three alternative approaches of the States also so holding. Specifically, the court stated that a spouse's professional degree or license, earned while married through the financial support of the other spouse, as well as each spouse's individual contributions to the marital unit, were relevant factors in the distribution of the couple's marital assets and liabilities. In addition, those contributions, as well as the duration of the marriage and the parties' relative future earning capacities, were to be taken into account in granting maintenance awards, where such awards were appropriate. Finally, a trial court could, in the exercise of its inherent equitable authority, grant relief pursuant to a claim for unjust enrichment presented in conjunction with a dissolution petition. *Weinstein*, 128 Ill. App. 3d at 244-45.

■ Contrary to the trial court's apparent belief, the *Weinstein* court did not say that there was a way to get around the fact that a professional license or degree was not marital property or that not setting a monetary value on the license or degree was that way. More importantly, even if the three methods approved in *Weinstein* for taking such license or degree into consideration in awarding relief in dissolution proceedings could be construed as "ways" of getting around the holding that it is not marital property, the trial court failed to employ any of those three methods in dealing with respondent's law degree or license. In holding, instead, that respondent's law license was a marital asset and in retaining jurisdiction thereover for "future determination as to distribution or apportionment," the trial court unabashedly failed to follow the governing law established by *Weinstein*. This was reversible error.

## VII

Respondent next contends that, contrary to the trial court's finding in entering the judgment of dissolution, he did not waive all of his right in and to any of the marital personal property, *i.e.*, furniture and furnishings. As we are reversing the judgment of dissolution for the various errors of law enumerated herein, we need not address this factual issue.

## VIII

Respondent next contends that the trial court erred in reserving

the question of petitioner's right to maintenance because she did not satisfy the statutory criteria for such an award. We disagree that the trial court's reservation of the issue of maintenance to petitioner was error. However, our disagreement with respondent's contention is not based on a finding that, contrary to his assertion, petitioner did satisfy the statutory prerequisites for maintenance. Rather, it is based on our conclusions: (a) that petitioner's satisfaction of the statutory criteria for a maintenance award was not decided by the trial court and (b) that the statutory prerequisites for reservation of the question of maintenance were met in this case.

■■■ The beginning point of our analysis is section 504 of the Dissolution Act, providing that a trial court may award a spouse maintenance only if it finds that she lacks sufficient property to provide for her reasonable needs or is unable to support herself through employment or is awarded custody of a child whose condition or circumstances justify not requiring the custodian to seek employment outside the home or is otherwise without sufficient income. (Ill. Rev. Stat. 1987, ch. 40, par. 504.) Notwithstanding the findings required under section 504 for a maintenance award, section 401(b) of the Act allows a trial court to enter a judgment of dissolution while reserving, *inter alia*, the question of maintenance for either spouse upon (i) agreement of the parties, or (ii) motion of either party and a finding that appropriate circumstances exist therefor. Ill. Rev. Stat. 1987, ch. 40, par. 401(b); *In re Marriage of Lord* (1984), 125 Ill. App. 3d 1, 465 N.E.2d 151.

■■■ In view of the foregoing provisions, we believe it is manifest that, in having reserved the issue of maintenance to the petitioner as allowed under section 401, the trial court did not reach or make the determinations required under section 504 for a maintenance award.[5] As such, the trial court's reservation of that issue is not assailable on the ground that petitioner did not meet the statutory prerequisites to justify such an award.

■■■ Moreover, we believe the trial court properly reserved the issue of maintenance. As noted above, section 401 provides that an issue such as maintenance may be reserved either upon agreement of the parties or a motion by either party *and* a finding that appropriate circumstances exist therefor. However, with respect to the latter

---

[5]We so conclude given that to "reserve" means, *inter alia*, to "defer the discussion or determination of." (Webster's Third New International Dictionary 1930 (1986).) We believe that this is the meaning the legislature intended to give the term "reserve" as used in section 401.

means by which an issue may be reserved, we do not believe that the record must reflect a formal motion by a party to reserve the issue and a formal finding by the trial court that appropriate circumstances for reservation exist. It is well established that, despite the plain language of section 504 that a court may award maintenance "only if it finds" that any of the prerequisites therefor have been satisfied, a trial court is not required to make express findings consistent with section 504. Rather, section 504 is satisfied if the record reveals a basis for the award. (*In re Support of McGrew* (1980), 90 Ill. App. 3d 27, 412 N.E.2d 641; *In re Marriage of Reyna* (1979), 78 Ill. App. 3d 1010, 486 N.E.2d 267.) It is well established that statutory provisions *in pari materia* should be construed harmoniously where possible. (*Rawles v. Hartman* (1988), 172 Ill. App. 3d 931, 527 N.E.2d 680.) Similarly, we believe it reasonable to construe the language of section 401 of the Dissolution Act that an issue such as maintenance may be reserved upon a motion of either party and a finding by the trial court that appropriate circumstances exist therefor to the same effect as the language of section 504.

That is, we believe that, notwithstanding the plain language of section 401, a party is not required to make a formal motion to reserve an issue and a trial court is not required to make an express finding that appropriate circumstances exist therefor. Rather, section 401, similarly to section 504, is satisfied if the record reveals: (a) that one of parties requested reservation of an issue; and (b) that appropriate circumstances existed therefor. See *In re Marriage of Cohn* (1982), 93 Ill. 2d 190, 443 N.E.2d 541 (stating that there was nothing in the record to reveal that the trial court gave any consideration to question whether there was a need to reserve issue, *inter alia*, of maintenance and that, inasmuch as the record was completely devoid of any appropriate circumstances when the trial court reserved issues, entry of judgment of dissolution was improper).

The record does not reveal that petitioner ever formally moved to reserve the issue of maintenance. However, it does reveal that her trial counsel did inform the court at the conclusion of her direct testimony that "we are reserving maintenance based on the premise that she earns insufficient income to care for herself and her children and *** is entitled to reserve this [issue] until such time as she can either become more income-productive or has less expenses in terms of child-care." As such, we conclude that the record reveals that the requirements of section 401 were met in this case.

In informing the court that she was reserving the issue of maintenance, we believe that petitioner substantially complied with the re-

quirement under section 401 of a motion to do so. Moreover, we find that the record establishes appropriate circumstances for reserving the issue of maintenance. As we have noted, petitioner gave as her reasons for reserving maintenance that she had insufficient income to care for herself and the parties' children and wished to do so until she either earned more or had fewer child-care expenses. In addition, respondent was not working at the time of the entry of judgment of dissolution. These were appropriate circumstances for reserving the maintenance issue. (See *In re Marriage of Smith* (1985), 132 Ill. App. 3d 694, 479 N.E.2d 929 (trial court did not err in reserving maintenance to allow wife time to become self-supporting where husband, on salary at time of dissolution, would have been unable to pay wife more of his income and meet his own needs).) In accord with *Smith*, we find no error in the reservation of maintenance in this case.

## IX

Respondent next contends the trial court erred in awarding custody of the parties' minor children to petitioner solely on the basis of its perception of respondent's marital misconduct and the relative financial circumstances of the parties. We disagree.

■■ Section 602 of the Dissolution Act provides that custody is to be determined in accordance with the best interests of the child. It then requires a court to consider all relevant factors including six specified therein. Finally it provides, essentially, that conduct of a parent that does not affect his relationship to the parties' children shall not be considered. Ill. Rev. Stat. 1987, ch. 40, par. 602.

The repeated acts of mental cruelty of which petitioner accused respondent and which constituted the marital misconduct upon which she based her dissolution action fell, broadly, into two categories. First there were those which were part and parcel of his refusal to work at any gainful employment and to contribute any income therefrom for family expenses for approximately 10 years prior to the filing of the petition for dissolution. Secondly, there were those acts of mental cruelty which were part and parcel of his refusal to assist the petitioner in maintaining a livable family habitat and in performing the routine chores inherent in family life.

■■ As respondent implies, the trial court considered the conduct of respondent which constituted the marital misconduct upon which petitioner based her dissolution action in determining the issue of custody. Specifically, the trial court considered whether respondent was a good role model for the parties' four minor male children in light of his failures to work for 10 years and to assist the petitioner in main-

taining a livable family environment during that time. However, we find no error in the trial court's so doing.

We so conclude because we believe the trial court correctly reasoned, albeit implicitly, that respondent's conduct directly affected his relationship to the parties' children and was a relevant, if not the dispositive, factor in determining to which party it would be in the best interests of the children to award their custody. The factors that are relevant to a custody determination include, in addition to those enumerated in section 602, the sufficiency and stability of the respective parties' homes and surroundings, the interaction and relationship of the child to his parent and the child's adjustment to his home. (*Montgomery v. Roudez* (1987), 156 Ill. App. 3d 262, 509 N.E.2d 499.) In view of these factors and those enumerated in section 602, we do not find the award of custody of the parties' four minor children to petitioner contrary to the manifest weight of the evidence. *Montgomery*, 156 Ill. App. 3d 262, 509 N.E.2d 499.

We also reject respondent's contention that the trial court erred in considering the relative financial circumstances of the parties in deciding the custody issue. Mere financial disparity is insufficient to deprive a natural parent of the custody of his child. However, the right of a parent to care for his child is associated with concomitant responsibilities, *e.g.*, to support the child, at least in part. As such, the relative economic positions of the parties are a factor that must be considered in determining the best interests of the child, especially where, as here, one of the parties had no visible means of support at the time of the custody award. (*Montgomery*, 156 Ill. App. 3d at 268.)[6] Given that respondent was not working at the time of the custody award to petitioner and had not worked for 10 years preceding and thus could not make any monetary contributions to the support of the children, the trial court did not err in considering the parties' financial circumstances. *In re Marriage of Theeke* (1982), 105 Ill. App. 3d 119, 433 N.E.2d 1311, cited by defendant, does not compel a contrary conclusion. *Theeke* merely holds that it was within the discretion of the trial court therein to decline to hear evidence of the parties' financial circumstances before deciding the issue of custody. It does not hold, as respondent contends, that it is an abuse of discretion to hear such evidence and we decline to construe it as so holding.

---

[6]The fact that *Montgomery* involved a custody dispute between a natural parent and a distant relative of her child does not make it inapplicable here.

## X

Respondent next contends the trial court erred in awarding child support to petitioner: (1) not stated in a specific dollar amount; (2) exceeding the guidelines established in section 505 of the Dissolution Act (Ill. Rev. Stat. 1987, ch. 40, par. 505) without considering all the relevant factors; (3) not lower than the guidelines since respondent earned a substantial income; and (4) based solely upon prospects of respondent's future income.

Before addressing the propriety of the trial court's child support determination, we must take note of the manner in which the trial court made its support determinations. In orally entering the child support award in this case, the trial court first stated that respondent would be required to pay $600 or 40% of his net income, whichever was greater, as child support for the parties' four minor children and 60% of their eldest child's college expenses. Upon being advised that the parties had five children (and apparently in the mistaken beliefs that it had not allotted for support of the fifth child and that that child was a minor), the trial court revised its support determination to $700 or 50% of respondent's net income. Ultimately, the court lowered the percentage figure to 45 without lowering the dollar amount respondent would be required to pay. Although the trial court manifested a misapprehension of the number of minor children in its oral ruling, its written judgment of dissolution ordered respondent to pay $700 or 45% of his net income as support for the parties four minor children and 60% of the eldest child's educational expenses.

In reaching its child support determinations, the trial court did not expressly indicate that it was applying the minimum percentage guidelines therefor established in section 505 of the Act. However, we find it manifest that it did so from its determinations in rendering its oral ruling that respondent should pay, first, 40% of his net income, if greater than $700, as support for the parties' four minor children and, then, 45% percent of his net income, if greater than $700, for the parties' five children. The trial court's utilization of the section 508 percentage guidelines is manifest from the foregoing because section 508 provides a minimum guideline of 40% of net income as support for four children and 45% thereof as support for five children.

With respect to the first error in the support determination asserted by respondent, a trial court does err in failing to state the child support obligation in a specific dollar amount and, instead, stating it as a percentage of the obligor spouse's net income. (*In re Marriage of Wassom* (1988), 165 Ill. App. 3d 1076, 519 N.E.2d 1147.) However, that is not the case here. Here, the trial court ordered re-

spondent to pay $700 or 45% of his net income, whichever would be greater, as and for child support. We believe that the trial court's judgment may be affirmed to the extent that it stated respondent's support obligation in a specific dollar amount if we find that determination otherwise valid. It is well established that where parts of a decree are clearly separable, only that part which is in excess of the court's authority is void and the remainder is valid. (*Green v. International Business Machines Corp.* (1976), 37 Ill. App. 3d 124, 345 N.E.2d 807; *Filosa v. Pecora* (1974), 18 Ill. App. 3d 123, 309 N.E.2d 356; *Chapman, Mazza, Aiello, Inc. v. Ace Lumber & Construction Co.* (1967), 83 Ill. App. 2d 320, 227 N.E.2d 562.) The trial court's erroneous provision for child support in the amount of 45% of respondent's net income, if greater than $700, is sufficiently separable from the provision for support in the latter amount as to not, alone, invalidate that provision.

However, we find that two errors by the trial court in setting respondent's support obligation (only one of which he asserts) also invalidate the child support award in the amount of $700 and obviate the need to address respondent's remaining allegations of error in the award.

Firstly, in ultimately equating $700 to 45% of respondent's net income, the trial court erred in ordering respondent to pay that amount as child support for the reason that the guidelines established in section 505 are not applicable to a party, such as respondent, who has no income at the time such an order is entered. Where, as in respondent's case, net income cannot be determined at the time a support order is entered, section 505 provides that a trial court "shall order support in an amount considered reasonable in the particular case." (Ill. Rev. Stat. 1987, ch. 40, par. 505(h)(5).) There is no indication in the record before us that the trial court considered the reasonableness of ordering respondent to pay either $700 or 45% of his net income, whichever was greater, as monthly support but merely applied the 45% for five children guideline of section 505 in a *pro forma* fashion (and equated it to $700 per month).

Secondly, in first equating $700 to 45% of respondent's net income and then ordering him to pay such an amount as child support for the parties' *four* minor children, it is manifest that the trial court exceeded the minimum support guidelines established in section 505 of the Act. However, as respondent asserts, there is also no indication in the record before us that before doing so, the trial court considered all relevant factors, including petitioner's and respondent's financial resources and needs, as it was required to under section 505(a)(2). (Ill.

Rev. Stat. 1987, ch. 40, par. 505(a)(2).) In this regard, we note that a trial court is not required to enter specific findings of fact regarding the factors the court considered in making its support determination. Nonetheless, there must be some indication in the record that the trial court considered the factors listed. (*In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 421 N.E.2d 1308.) There is no indication in the record before us that the trial court considered petitioner's financial resources, which consisted of her employment income, or respondent's needs. As such, the court's award of child support for the four minor children cannot stand.

## XI

Respondent next contends the trial court erred in requiring him to pay 60% of the college expenses of the parties' eldest child. We agree.

Section 513 of the Dissolution Act, after providing for support for educational expenses, provides that in making such awards, trial courts are to consider the financial resources of both parties and the child involved and the standard of living of the child had the marriage not been dissolved. (Ill. Rev. Stat. 1987, ch. 40, par. 513.) A court should not order a party to pay more for educational expenses than he can afford. Moreover, the trial court must evaluate the party's ability to pay with regard to his resources at the time of the order. *In re Support of Pearson* (1986), 111 Ill. 2d 545, 490 N.E.2d 1274.

It does not appear from the record before us that the trial court evaluated respondent's ability to pay 60% of the parties eldest child's college expenses with regard to his resources at the time of the order. Given the total lack of any evidence of any substantial assets on respondent's part, we cannot conclude that he was not ordered to pay more of his daughter's educational expenses than he could reasonably afford. The trial court also erred in this regard.

## XII

Respondent next contends that petitioner's pretrial memorandum (which he characterizes as an *ex parte* communication with the trial court because he was not served with a copy) improperly influenced the judgment of the trial court. As we are reversing the trial court's judgment due to the various errors we have found therein, we need not address this issue.

## XIII

Respondent next contends that the trial court erred in allowing a

Cook County Department of Supportive Services caseworker to give an expert opinion as to who should be awarded custody. The caseworker was assigned, pursuant to the trial court's order, to submit a report to the court relating to the custody of the parties' children. We agree that allowing this testimony was error.

■■■ Even assuming that the caseworker was an expert, a foundation must first be laid to demonstrate that the trial court, as the trier of fact, needed the assistance of an expert opinion, as contrasted with mere evidentiary facts, in order to decide the custody issue. (*In re Marriage of Hazard* (1988), 167 Ill. App. 3d 61, 520 N.E.2d 1121; *In re Marriage of Theis* (1984), 121 Ill. App. 3d 1092, 460 N.E.2d 912.) However, as in *Hazard* and *Theis*, such foundation is lacking in the record before us. As such, the admission of the caseworker's opinion on the issue of custody was error.

## XIV

■■■ Respondent lastly contends that the trial court erred in denying his motion for sanctions under section 2—611 of the Civil Practice Law. Specifically, respondent asserts that petitioner's petitions for attorney fees under the Act and for sanctions under section 2—611 were unwarranted by Illinois law and signed in violation of section 2—611. He further asserts that petitioner's responses to his request to admit, which responses totalled 26 pages, were interposed for the improper purpose of avoiding substantial compliance with the rules of discovery. Finally, respondent asserts that petitioner's motion to dismiss with prejudice his post-trial motions for: modification of judgment; retrial; sanctions under section 2—611; *vacatur* of the judgment in petitioner's favor for attorney fees and sanctions under section 2—611 was frivolous, without factual support and interposed to cause needless increases in the cost of litigation.

In asserting error in the denial of his motion for sanctions on the basis of petitioner's petitions for attorney fees under the Act and for sanctions under section 2—611, respondent has ignored that he did not base that motion upon those petitions in the trial court. Having failed to seek relief in the trial court for petitioner's alleged violation of section 2—611 in filing those petitions, respondent cannot seek such relief on appeal.

Respondent did base his motion for sanctions, in part, upon petitioner's responses to his requests to admit the genuineness of the letter purportedly written by her to Pamela Spence. However, after reviewing the record, we cannot conclude that the trial court abused its discretion in denying respondent's motion to the extent that it was

based on petitioner's answers to his requests to admit. *Malatesta v. Leichter* (1989), 186 Ill. App. 3d 602, 542 N.E.2d 768.

Respondent also did base his motion for sanctions, in part, upon petitioner's motion to dismiss with prejudice his post-trial motions. To the extent that was the case, we conclude that the trial court abused its discretion in denying respondent's motion for sanctions. Petitioner's motion was based entirely upon respondent's alleged failure to have filed his post-trial motions within 30 days of the entry of judgment in this case, as required under sections 2—1203 and 2—1301 of the Civil Practice Law.[7] (Ill. Rev. Stat. 1987, ch. 110, pars. 2—1203, 2—1301.) The record reveals that the judgment of dissolution in this case was entered on June 13, 1988, and that respondent filed his post-trial motions on July 13, 1988. July 13 is the 30th day after June 13. Respondent's motions were thus clearly and unmistakably filed "within" 30 days of the judgments appealed from. As such, petitioner's motion to dismiss could not have been well grounded in fact after reasonable inquiry, as required under section 2—611. Upon remand the trial court is to conduct a hearing to determine the appropriate sanction for the violation of section 2—611 by petitioner's attorney, who certified the motion to dismiss.

For all of the reasons stated herein, we reverse: (1) the judgment of dissolution; (2) the judgments awarding petitioner attorney fees under the Dissolution Act and section 2—611 of the Civil Practice Law; (3) the denial of respondent's motion for section 2—611 sanctions. The cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

CERDA, P.J., and WHITE, J., concur.

---

[7]This motion was eventually denied by the trial court and petitioner was given leave to file a new response to respondent's post-trial motions.