*In re* MARRIAGE OF CORRINE J. SHEETZ, Petitioner-Appellant and Cross-Appellee, and DANIEL P. SHEETZ, Respondent-Appellee and Cross-Appellant.

First District (2nd Division)   No. 1—91—3651

Opinion filed September 28, 1993.

Marshall J. Auerbach & Associates, Ltd., of Chicago (Marshall J. Auerbach, of counsel), for appellant.

Kaufman & Litwin, of Chicago, for appellee.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court:

The trial court vacated the child support provisions of a judgment for dissolution of marriage which incorporated a settlement agreement. The trial court ordered child support of 20% of the father's fluctuating income. We reverse and remand for entry of an order which complies with the statutory requirement of specific dollar amounts in orders for child support.

Respondent Daniel P. Sheetz married petitioner Corrine J. Sheetz in 1975, and petitioner gave birth to Daniel P. Sheetz, Jr., the following year. Petitioner filed for dissolution of marriage on November 3, 1986. The parties settled all of the issues pertaining to the dissolution proceeding and signed a settlement agreement, dated July 1, 1988, which provided:

"The Husband shall pay directly to the Wife and not through the Clerk of Court, as and for child support, the greater of

$650.00 per month or 20% of his net income per month. Net income shall be defined as utilized in the current support guideline statute. *** The Husband shall also promptly notify the Wife of all changes in employment and income. ***

\* \* \*

*** [T]he parties hereby release and waive any and all errors which may be contained in the proceedings and record of the above entitled cause *** and which might otherwise be taken advantage of by the parties hereto by motion to set aside said orders or judgments, or by writ of error, or by appeal or by any other proceedings in law or in equity. The parties hereto hereby consent and agree that this release of errors may be pleaded or offered in evidence to bar, defeat and terminate any proceedings whatsoever which may hereafter be taken by the parties hereto to appeal, vacate, set aside or annul, reverse or cancel the judgment or any orders entered in the above entitled cause."

The trial court incorporated the settlement agreement into the judgment of dissolution of the marriage, which it entered on September 28, 1988.

On November 7, 1990, respondent moved to vacate the child support provisions of the judgment of dissolution, arguing that the percentage formula in the judgment was void because it violated section 505(a)(5) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1989, ch. 40, par. 505(a)(5)). Respondent swore in his verified motion that the $650-per-month child support exceeded 20% of his net income in 1988, but his projected net income for 1990 would be $100,000. He argued that the child did not need 20% of respondent's income and he feared that a percentage formula for determining child support would result in his ex-wife getting a windfall.

On November 7, 1991, the trial court granted the motion and vacated the child support provision of the judgment of dissolution. The court ordered respondent to pay petitioner, retroactive to the date of the judgment of dissolution, the sum of $650 per month for child support, but

"at the end of each year, if the sum of $650.00 per month is less than 20% of DANIEL P. SHEETZ' net income from all sources, then DANIEL P. SHEETZ shall pay, as additional child support to CORRINE J. SHEETZ, that greater amount. Alternatively, if the 20% is less than the $650.00 per month figure, Corrine J. Sheetz must return to Daniel P. Sheetz that sum of money. The level of support; i.e., 20% of DANIEL P.

SHEETZ' net income, shall also apply retroactively to the date of the entry of the Judgment of Dissolution of Marriage."

Petitioner appealed and respondent cross-appealed from the order.

Respondent contends that both the original judgment of dissolution and the order modifying child support are partly void because they exceed the trial court's jurisdiction.

"Equity courts have no inherent power in dissolution cases. The jurisdiction of a court in a dissolution proceeding is limited to that conferred by statute." (*In re Marriage of Milliken* (1990), 199 Ill. App. 3d 813, 817, 557 N.E.2d 591.) A judgment is void, in excess of the court's jurisdiction, if the court "lacks the inherent power to make or enter the particular order involved." (*People ex rel. the Village of Winnetka v. Dorner* (1989), 181 Ill. App. 3d 25, 27, 536 N.E.2d 856.) Thus, in dissolution proceedings, any act of the court not specifically authorized by statute is in excess of the court's jurisdiction and, therefore, void. See *In re Marriage of Brown* (1992), 225 Ill. App. 3d 733, 737, 587 N.E.2d 648.

The Illinois legislature, by adopting the Act, intended to "promote the amicable settlement of disputes that have arisen between parties to a marriage." (Ill. Rev. Stat. 1989, ch. 40, par. 102(3).) To achieve this, the legislature provided that

"the parties may enter into a written or oral agreement containing provisions for disposition of any property owned by either of them, maintenance of either of them and support, custody and visitation of their children." (Ill. Rev. Stat. 1989, ch. 40, par. 502(a).)

The Act further expressly provides that unless the court finds the agreement unconscionable, its terms, "except those providing for the support, custody and visitation of children, are binding upon the court." Ill. Rev. Stat. 1989, ch. 40, par. 502(b).

Since the Act provides that the parties' agreement binds the court, the terms of the marital agreement prevail over statutory directions (see *In re Marriage of Houston* (1986), 150 Ill. App. 3d 608, 614, 501 N.E.2d 1015) and permit the court to enter judgment on agreed provisions for disposition of property and maintenance, even if the court could not have ordered such dispositions in the absence of the agreement. (See Ill. Rev. Stat. 1989, ch. 40, par. 502(b).) The court is not authorized to order maintenance to continue after the death of a party, but the Act expressly states that the court has the power to approve a settlement which provides for continuation of maintenance after the death of a party (Ill. Rev. Stat. 1989, ch. 40, par. 510(c)).

While most provisions in settlement agreements bind the court, the Act states that agreements pertaining to child custody and support do not bind the court. "The court is obligated in marital dissolution proceedings to protect the best interests of the children involved. *** Parents may not bargain away their children's interests." (*Blisset v. Blisset* (1988), 123 Ill. 2d 161, 167-68, 526 N.E.2d 125.) Even when the parties have agreed to a resolution of child custody and support issues, the court must consider the best interests of the children in deciding whether to approve the settlement. *In re Support of Bayuk* (1979), 79 Ill. App. 3d 877, 881, 398 N.E.2d 1109.

In *Blisset* the mother agreed to the termination of the father's child support payments ordered in the judgment of dissolution, in exchange for the father's waiver of visitation rights. Our supreme court held:

> "[P]arents may create an enforceable agreement for modification of child support only by petitioning the court for support modification and then establishing, to the satisfaction of the court, that an agreement reached between the parents is in accord with the best interests of the children." *Blisset*, 123 Ill. 2d at 168.

This principle applies to initial judgments of dissolution based on agreements as well as modification agreements. Section 502(b) of the Act

> "places upon the court a duty to protect the children involved by carefully examining the separation agreement. An agreement of the parties concerning visitation does not bind the trial court when the best interests of the child are to the contrary. [Citation.] Yet, courts have traditionally given great weight to parental agreements regarding child custody, as it may normally reasonably be assumed that parents, considering the best interests of their children, would be in a better position than the court to make these decisions." (*In re Marriage of Spomer* (1984), 123 Ill. App. 3d 31, 35, 462 N.E.2d 724.)

Thus, agreements for child support aid the trial court, but they do not relieve the trial court of the responsibility for ordering child support in accord with the best interests of the children. See *In re Marriage of Carney* (1979), 67 Ill. App. 3d 919, 923, 385 N.E.2d 359.

Neither can the parties by agreement waive the right to challenge child support provisions in settlement agreements or court orders. While the Act allows the parties by agreement to expressly "preclude or limit modification" of the terms of a judgment, the Act specifies that the parties cannot preclude modification of provisions pertaining

to child custody, support or visitation. (Ill. Rev. Stat. 1989, ch. 40, par. 502(f).) Hence, the waiver provision of the agreement between the parties here is valid, except insofar as the waiver applies to child support, custody and visitation. Those provisions are always subject to attack by either party, regardless of any agreement to waive the right to challenge such provisions. In re Support of Burks (1981), 100 Ill. App. 3d 700, 703-04, 427 N.E.2d 353.

The Act specifically authorizes the court to approve an agreement providing for child support to continue after the emancipation of the child. (Ill. Rev. Stat. 1989, ch. 40, par. 510(d).) The Act does not otherwise permit the trial court to include in its order, by approving an agreement, any provisions for child support that the court could not order in the absence of the agreement. The agreement for child support does not bind the trial court; the Act does. Therefore, child support provisions in a dissolution agreement adopted by the trial court are void, in excess of the court's jurisdiction, if the trial court could not order those provisions in the absence of the agreement.

The legislature amended section 505 of the Act to provide:

"The final order in all cases shall state the support level in dollar amounts." (Ill. Rev. Stat. 1989, ch. 40, par. 505(a)(5).)

Representative Myron Olson, sponsor of the amendment, explained that this sentence meant that the trial court's order for child support must state "a dollar amount as opposed to a percentage of income." (84th Ill. Gen. Assem., House Proceedings, May 14, 1985, at 64.) The amendment is "intended to help the clerk responsible for collecting payments" (84th Ill. Gen. Assem., House Proceedings, May 20, 1985, at 35) by making definite the amount the court is to collect. Under the amended Act, the court has sole responsibility for calculating the net income of the parties, as defined in section 505(a)(3). (Ill. Rev. Stat. 1989, ch. 40, par. 505(a)(3).) The trial court must apply the guidelines and consider any other relevant factors to determine the exact dollar amount of support. (In re Marriage of Wassom (1988), 165 Ill. App. 3d 1076, 1082, 519 N.E.2d 1147.) The Act permits no exception, even when the child support payments need not pass through the court.

In In re Marriage of Ferguson (1990), 207 Ill. App. 3d 649, 650, 566 N.E.2d 335, the trial court ordered the respondent to pay, as child support, "$573.80 per month, or 20% of his net take-home pay, whichever is greater." The appellate court reversed the order, finding that the statute did not authorize inclusion of a percent figure in the order for support. (Ferguson, 207 Ill. App. 3d at 651.) Since the inclusion of the percent as an alternate figure for child support required

the clerk interpreting the judgment to calculate the dollar amount from the percent given in the order, and compare it to the alternate sum of $573.80 per month, the order did not serve the statutory purpose of requiring the trial court, rather than the clerk, to calculate the exact collection amount.

Neither the Act nor the trial court's inherent powers authorize the court to order child support as a percentage of income. An order which states child support as a percentage of income, therefore, exceeds the court's jurisdiction, so it is void. (*In re Marriage of Fahy* (1991), 208 Ill. App. 3d 677, 697, 567 N.E.2d 552.) In *Fahy* the parties reached no agreement for child support and the court, after hearing evidence, ordered respondent to pay "$700 or 45% of his net income, whichever would be greater, as and for child support." (*Fahy*, 208 Ill. App. 3d at 697.) The appellate court first vacated the provision for 45% of the net income as void, noting that if the provision for $700 per month were separable from the percentage provision, that part of the order might be valid despite the void percentage provision. The court reversed the order for $700 per month because the record did not show that the court considered the statutory factors in reaching that figure. Ill. Rev. Stat. 1989, ch. 40, par. 505(a)(2); *Fahy*, 208 Ill. App. 3d at 697-98.

Here, the trial court, by adopting the parties' agreement, ordered respondent to pay child support of $650 per month, or 20% of his income, whichever was greater. Since the Act does not permit the trial court to order child support expressed as a percentage of income, and the agreement of the parties regarding child support cannot expand the court's jurisdiction beyond the boundaries set in the Act, the order for a percentage of income is void, in excess of the trial court's jurisdiction. The entire provision for support, as the product of negotiations between the parties, is a single whole; since the negotiated alternative of $650 per month in child support is not clearly separable from the negotiation for 20% of respondent's net income, the dollar figure for child support is also invalid. As the provision exceeds the court's jurisdiction, the parties may attack it at any time, without regard to the requirements for post-judgment relief from valid orders. *Filosa v. Pecora* (1974), 18 Ill. App. 3d 123, 128, 309 N.E.2d 356; Ill. Rev. Stat. 1991, ch. 110, par. 2—1401(f).

While the trial court correctly concluded that the child support provisions of the order for dissolution were void, the court again ordered child support in an amount stated as a percentage of respondent's income. The trial court's modified order for child support is

therefore void also. We remand for determination of child support, which must be, in the final order, stated solely in dollar amounts.

On remand the trial court should attend to the statutory policy of encouraging settlement of all issues, including child support. (Ill. Rev. Stat. 1989, ch. 40, par. 502(a).) While the trial court is not bound by the agreement concerning child support, the court should not set aside an agreement which adequately protects the child's interests, unless the agreement is contrary to public policy or a party presents convincing evidence that the agreement resulted from fraud, coercion or duress. (See *Spomer*, 123 Ill. App. 3d at 35; *In re Marriage of Falat* (1990), 201 Ill. App. 3d 320, 325-26, 559 N.E.2d 33.) The inclusion of percentages in the guidelines for determination of child support shows that public policy supports the use of percentages as a basis for a court's calculation of child support. (See Ill. Rev. Stat. 1989, ch. 40, par. 505(a)(1).) Of course, either parent may present evidence to show a need to modify their agreement pursuant to section 510 of the Act. Ill. Rev. Stat. 1989, ch. 40, par. 510.

Where the agreement states a percentage of income as support, the trial court should apply section 505(a)(3) to determine the net income, and then state the child support as a dollar amount. In light of the parties' acts over several years in reliance on the void order, we find that this is an appropriate case for the court to exercise its discretion to order retroactive child support. (See *In re Marriage of Rogliano* (1990), 198 Ill. App. 3d 404, 410, 555 N.E.2d 1114.) The court may use historical income data to determine the appropriate amount of retroactive support. (See *In re Marriage of Schroeder* (1991), 215 Ill. App. 3d 156, 161, 574 N.E.2d 834.) Future child support should be based on reliable evidence of respondent's current income (see *Schroeder*, 215 Ill. App. 3d at 160-62), and either party will be able to request a change in child support if respondent's income changes or if there is any other substantial change in circumstances. (Ill. Rev. Stat. 1989, ch. 40, par. 510(a).) Respondent has a continuing obligation under the settlement agreement to inform petitioner of all changes in his income. If the trial court chooses to award child support at a level lower than guideline percentages, it must make express findings as to its reasons for doing so. (*In re Marriage of Morgan* (1991), 219 Ill. App. 3d 973, 974, 579 N.E.2d 1214.) The court should also explain any variance between its order and the parties' agreement. See Ill. Rev. Stat. 1989, ch. 40, par. 502(a).

Both the trial court's original order incorporating the parties' agreement, and the subsequent order modifying the original order, state the award of child support partly as a percentage of respond-

ent's income. Therefore, both orders are, in part, in excess of the trial court's authority, and the provisions for child support are void. The case is remanded for determination of appropriate child support, to be stated in a dollar amount.

Reversed and remanded.

HARTMAN and SCARIANO, JJ., concur.