CRAWFORD SUPPLY COMPANY, Plaintiff-Appellee, v. MARC K. SCHWARTZ *et al.*, Defendants-Appellants (Wells Fargo Bank, N.A., *et al.*, Defendants).

First District (6th Division)    No. 1—09—0900

Opinion filed September 25, 2009.—Rehearing denied December 4, 2009.

Schwartz Wolf & Bernstein, LLP, of Buffalo Grove, for appellants.

Fuchs & Roselli, Ltd., of Chicago, for appellee.

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

This matter is before us on interlocutory appeal pursuant to the provisions of Illinois Supreme Court Rule 308 (155 Ill. 2d R. 308) to consider a question certified by the trial court. Plaintiff, Crawford Supply Company, filed a two-count verified complaint, count I of which seeks to foreclose on plaintiff's subcontractor's mechanics lien against an owner-occupied single-family residence located at 2640 Prince

Street in Northbrook, Illinois (subject property).[1] Plaintiff's complaint alleges that it furnished materials to the general contractor hired to make improvements to the subject property, for which it has not been paid.[2] Defendants, Marc K. Schwartz and Terri B. Schwartz (husband and wife)[3], the owners of the subject property, filed a motion to dismiss count I of plaintiff's complaint pursuant to section 2—619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(9) (West 2006)) claiming that plaintiff's lien was invalid due to plaintiff's failure to provide the Schwartzes with notice of its subcontract within 60 days of its first furnishing materials to their residence as required by section 5(b)(ii) of the Mechanics Lien Act (Act) (770 ILCS 60/5(b)(ii) (West 2006)). The trial court denied the Schwartzes' motion to dismiss, finding that plaintiff's written notice pursuant to section 24(a) of the Act (770 ILCS 60/24(a) (West 2006)) "constituted substantial compliance with the notice requirements under section[s] 5(b)(ii) and 5(b)(iii)." The Schwartzes then filed a motion to reconsider the denial of their motion to dismiss count I of plaintiff's complaint, or in the alternative, for a finding that "the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation" pursuant to Illinois Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)). The trial court denied the Schwartzes' motion to reconsider the denial of their motion to dismiss count I of plaintiff's complaint; however, the trial court granted the Schwartzes' motion for a Rule 308(a) finding and certified the following question for our review:

"Where a subcontractor asserts a claim for lien on an owner-occupied single-family residence and serves a 90-day notice as provided in Section 24 of the Mechanics Lien Act, does the subcontractor's failure to serve a 60-day notice as provided in Section 5(b) of the Mechanics Lien Act render the claim for lien invalid?"

For the reasons that follow, we narrow the scope of the certified question, answer it in the negative, and remand to the trial court for further proceedings.

---

[1]Count II of plaintiff's complaint seeking damages for services rendered under a theory of *quantum meruit* is not before this court in this interlocutory appeal.

[2]The record in this case shows that plaintiff has a default judgment against Premier Renovation, Inc., the general contractor in this case; however, the record does not indicate whether Premier is able to pay that judgment.

[3]We will refer to Marc and Terri Schwartz collectively as "the Schwartzes" throughout this decision where appropriate.

## BACKGROUND

According to the complaint in the case at bar, plaintiff is, and at all relevant times was, an Illinois corporation engaged in the business of "supplying plumbing and related materials and fixtures." The Schwartzes are the owners of the subject property. Defendants, Wells Fargo, N.A., and LaSalle Bank, N.A., were mortgagees to the subject property on June 10, 2008, the date on which the complaint in the instant case for foreclosure of mechanic's lien and other relief was filed. Defendants, Bill's Drywall, Inc., Precision Painting and Decorating, Corp., and Hillside Lumber, Inc., were mechanics lien claimants to the subject property on the date on which the complaint in the instant case was filed.

According to the complaint, "prior to December 20, 2006," the Schwartzes entered into a written contract with general contractor Premier Renovation, Inc., to make certain improvements to their home. The written contract required Premier to furnish certain plumbing and related materials and fixtures for those improvements. On December 20, 2006, Premier executed a written purchase order with plaintiff for the delivery of the plumbing materials and fixtures required under the written contract between the Schwartzes and Premier. Invoices for the materials and fixtures provided by plaintiff to Premier are attached to the complaint in the case at bar as exhibit B. According to the complaint, plaintiff delivered all the materials and fixtures under the December 20, 2006, written purchase order between December 20, 2006, and July 18, 2007. The complaint alleges that Premier failed to make any payment to plaintiff under the purchase order; plaintiff claims the sum due under the purchase order agreement is $20,176.99.

It is undisputed that plaintiff never provided the Schwartzes with notice of its agreement to provide services, materials and fixtures as subcontractor within 60 days from its first furnishing of such services, materials and fixtures, as required by section 5(b)(ii) of the Act (770 ILCS 60/5(b)(ii) (West 2006)).

On August 9, 2007, plaintiff provided the Schwartzes with written notice of its lien claim pursuant to section 24(a) of the Act (770 ILCS 60/24(a) (West 2006)). Under section 24(a) of the Act, a subcontractor must send or serve its notice of lien claim within 90 days after "completion" of his work in order for the claim for lien to be enforceable. 770 ILCS 60/24(a) (West 2006). Plaintiff's notice of lien claim under section 24(a), a copy of which is included in the record, describes the subject property, recites the balance due plaintiff under its subcontract with Premier, and is signed by plaintiff's "authorized agent."

On August 30, 2007, plaintiff caused an original subcontractor's claim for lien in the amount of $20,176.99 to be filed with the office of the Cook County recorder of deeds as document number 0724260048.

On June 10, 2008, plaintiff filed its complaint in the instant action, count I of which, as noted, seeks to foreclose on its subcontractor's mechanics lien. On September 26, 2008, the Schwartzes, in lieu of filing an answer to plaintiff's complaint, filed a motion to dismiss count I of plaintiff's complaint pursuant to section 2—619 of the Code (735 ILCS 5/2—619 (West 2006)) claiming that, in the case of an owner-occupied single-family residence, section 5(b)(ii) of the Act (770 ILCS 60/5(b)(ii) (West 2006)) requires a subcontractor to provide the owner of the residence with the statutorily prescribed form of notice within 60 days of first furnishing labor or material. The Schwartzes further claimed that a subcontractor's service of its claim for lien under section 24(a) of the Act (770 ILCS 60/24(a) (West 2006)) does not replace or obviate the need for the 60-day notice required under section 5(b)(ii) of the Act (770 ILCS 60/5(b)(ii) (West 2006)). The Schwartzes contended that count I of plaintiff's complaint should be dismissed because plaintiff's failure to provide the 60-day notice required under section 5(b)(ii) of the Act (770 ILCS 60/5(b)(ii) (West 2006)) rendered plaintiff's lien claim invalid. The Schwartzes' motion to dismiss was verified by the affidavit of Marc K. Schwartz. In his affidavit, Marc attested that neither he nor his wife, Terri B. Schwartz, ever received a section 5 notice from plaintiff, and that although he requested a sworn contractor statement from Premier, he never received one. Neither the Schwartzes' motion to dismiss nor the attached affidavit claimed that the Schwartzes were prejudiced by plaintiff's failure to provide section 5(b)(ii) notice by payments already made to Premier.

On November 10, 2008, plaintiff filed a response to the Schwartzes' motion to dismiss. In its response, plaintiff claimed that the motion to dismiss should be denied because the Schwartzes had an obligation under section 5 of the Act (770 ILCS 60/5 (West 2006)) to demand a sworn statement from Premier of all subcontractors' claims for work performed on the subject property, and to refuse payment to Premier if they did not receive such sworn statement. Plaintiff argued that the Schwartzes "failed to avail themselves" of the protections afforded them under section 5 of the Act (770 ILCS 60/5 (West 2006)) and, thus, cannot be relieved of liability to plaintiff. Plaintiff further argued that it complied with both sections 5(b) and 24(a) of the Act (770 ILCS 60/5(b), 24(a) (West 2006)), when it provided the 90-day notice of its lien claim and that the Schwartzes suffered no prejudice as a result of plaintiff's failure to comply with section 5(b)(ii) of the Act (770 ILCS 60/5(b)(ii) (West 2006)).

On December 2, 2008, the Schwartzes filed a reply to plaintiff's response to their motion to dismiss. In their reply, the Schwartzes claimed that a showing of prejudice might be required under section 5(b)(iii) of the Act (770 ILCS 60/5(b)(iii) (West 2006)) had plaintiff served an untimely section 5(b)(ii) notice, but that a showing of prejudice is not germane in this case because plaintiff never provided a section 5(b)(ii) notice.

On December 2, 2008, the trial court denied the Schwartzes' motion to dismiss, finding that plaintiff's "90-day notice to owner constituted substantial compliance with the notice requirements under section 5(b)(ii) and 5(b)(iii) of the [Act]."

On December 23, 2008, the Schwartzes filed their motion to reconsider the denial of their motion to dismiss, or in the alternative, for an Illinois Supreme Court Rule 308(a) finding. On March 12, 2009, the trial court denied the motion to reconsider; however, it granted the motion for an Illinois Supreme Court Rule 308(a) finding. The trial court specifically found that a substantial ground for difference of opinion exists on the question of law set forth in the certified question before us, and that immediate appeal to this court from its December 2, 2008, and March 12, 2009, orders would materially advance the ultimate termination of this litigation.

On April 9, 2009, the Schwartzes petitioned this court for leave to appeal pursuant to Illinois Supreme Court Rule 308. 155 Ill. 2d R. 308. On May 6, 2009, this court granted the petition, and this appeal followed.

## ANALYSIS

■ Illinois Supreme Court Rule 308 provides a remedy of permissive appeal from interlocutory orders where the trial court has deemed that they involve a question of law as to which there is substantial ground for difference of opinion and where an immediate appeal from the order may materially advance the ultimate termination of the litigation. 155 Ill. 2d R. 308. We apply a *de novo* standard of review to legal questions presented in an interlocutory appeal brought pursuant to Supreme Court Rule 308. *Anthony v. City of Chicago*, 382 Ill. App. 3d 983, 987 (2008).

In addition to the certified question we are asked to review, the Schwartzes urge us to reverse the trial court's denial of their motion to dismiss count I of plaintiff's complaint and the denial of their motion to reconsider that denial.

The certified question asks:

"Where a subcontractor asserts a claim for lien on an owner-occupied single-family residence and serves a 90-day notice as

provided in Section 24 of the Mechanics Lien Act, does the subcontractor's failure to serve a 60-day notice as provided in Section 5(b) of the Mechanics Lien Act render the claim for lien invalid?"

The certified question is overly broad. We will interpret the certified question to ask only whether plaintiff's failure to serve a 60-day notice as provided in section 5(b) of the Act renders plaintiff's claim for lien invalid as a matter of law. We will then address the propriety of the trial court's finding that plaintiff's section 24(a) notice substantially complied with the requirements of section 5(b). See *Burnette v. Stroger*, 389 Ill. App. 3d 321, 332 (2009), quoting 155 Ill. 2d R. 308(a) (purpose of an immediate, interlocutory appeal is solely to " 'materially advance the ultimate termination of the litigation' ").

This interlocutory appeal requires us to construe certain sections of the Mechanics Lien Act (770 ILCS 60/0.01 *et seq.* (West 2006)). Questions of statutory construction are reviewed *de novo. People ex rel. Devine v. Sharkey*, 221 Ill. 2d 613, 617 (2006). When construing a statute, our " 'primary objective *** is to ascertain and give effect to the intent of the legislature.' " *MidAmerica Bank, FSB v. Charter One Bank, FSB*, 232 Ill. 2d 560, 565 (2009), quoting *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). The plain language of the statute is the most reliable indication of legislative intent. *DeLuna*, 223 Ill. 2d at 59. "[W]hen the language of the statute is clear, it must be applied as written without resort to aids or tools of interpretation." *DeLuna*, 223 Ill. 2d at 59. "The statute should be read as a whole and construed so that no part of it is rendered meaningless or superfluous." *People v. Jones*, 214 Ill. 2d 187, 193 (2005). Courts should not depart from a statute's plain language by reading into it exceptions, limitations, or conditions that conflict with the legislative intent. *People v. Martinez*, 184 Ill. 2d 547, 550 (1998).

■ The central issue in this appeal is a construction of section 5 of the Act (770 ILCS 60/5 (West 2006)). We set forth section 5 of the Act completely in its current form, which provides as follows:

"§5. Statement of persons furnishing labor, services, material, fixtures, apparatus or machinery, forms or form work notice to owner of waiver; size of type.

(a) It shall be the duty of the contractor to give the owner, and the duty of the owner to require of the contractor, before the owner or his agent, architect, or superintendent shall pay or cause to be paid to the contractor or to his order any moneys or other consideration due or to become due to the contractor, or make or cause to be made to the contractor any advancement of any moneys or any other consideration, a statement in writing, under oath or

verified by affidavit, of the names and addresses of all parties furnishing labor, services, material, fixtures, apparatus or machinery, forms or form work and of the amounts due or to become due to each. Merchants and dealers in materials only shall not be required to make statements required in this Section.

(b) The following shall apply to an owner-occupied single-family residence:

(i) Each contractor shall provide the owner or his or her agent, either as part of the contract or as a separate printed statement given before the owner or his agent makes the first payment for labor, materials, fixtures, apparatus or machinery, the following:

'THE LAW REQUIRES THAT THE CONTRACTOR SHALL SUBMIT A SWORN STATEMENT OF PERSONS FURNISHING LABOR, SERVICES, MATERIAL, FIXTURES, APPARATUS OR MACHINERY, FORMS OR FORM WORK BEFORE ANY PAYMENTS ARE REQUIRED TO BE MADE TO THE CONTRACTOR.'

If the owners of the property are persons living together, the aforesaid statement is conclusively presumed given to each such owners if given to one of them.

(ii) Each subcontractor who has furnished, or is furnishing, labor, services, material, fixtures, apparatus or machinery, forms or form work in order to preserve his lien, shall notify the occupant either personally or by certified mail, return receipt requested, addressed to the occupant or his agent at the residence within 60 days from his first furnishing labor, services, material, fixtures, apparatus or machinery, forms or form work, of his agreement to do so.

The notice shall contain the name and address of the subcontractor or material man, the date he started to work or to deliver materials, the type of work done and to be done or the type of labor, services, material, fixtures, apparatus or machinery, forms or form work delivered and to be delivered, and the name of the contractor requesting the work. The notice shall also contain the following warning:

'NOTICE TO OWNER

The subcontractor providing this notice has performed work for or delivered material to your home improvement contractor. These services or materials are being used in the improvements to your residence and entitle the subcontractor to file a lien against your residence if the labor, services, material, fixtures, apparatus or machinery, forms or form work are not paid for by your home improvement contractor. A lien waiver

will be provided to your contractor when the subcontractor is paid, and you are urged to request this waiver from your contractor when paying for your home improvements.'

(iii) The statement and the notices required by subdivisions (b)(i) and (b)(ii) of this Section shall be in at least 10 point boldface type. For purposes of this Section, notice by certified mail is considered served at the time of its mailing. Any notice given pursuant to subdivision (b)(ii) of this Section after 60 days by the subcontractor, however, shall preserve his or her lien, but only to the extent that the owner has not been prejudiced by payments made before receipt of the notice." 770 ILCS 60/5 (West 2006).

In 1975, section 5 of the Act was amended to require that a subcontractor's notice be served upon the occupant of an existing owner-occupied single-family residence within 14 days (in 1991, the legislature amended section 5 to provide for the current 60-day notice period). The proceedings in the General Assembly at the time of the 1975 amendment to section 5 demonstrate that the amendment was made to protect the homeowner of a single-family dwelling and to warn him to secure a waiver of lien from the subcontractor so that he would not have to pay twice. *Gary L. Brown Painting & Decorating, Ltd. v. David E. Comeau, Ltd.*, 159 Ill. App. 3d 746, 749 (1987).

Before proceeding further, we note the well-settled principles regarding the Act. "The purpose of the Act is to permit a lien upon premises where a benefit has been received by the owner and the value or condition of the property has been increased or improved by the furnishing of labor and materials." *Northwest Millwork Co. v. Komperda*, 338 Ill. App. 3d 997, 1000 (2003), citing *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 164 (1998). Because the rights under the Act are in derogation of the common law, the steps necessary to invoke those rights must be strictly construed. *Westcon/ Dillingham Microtunneling v. Walsh Construction Co. of Illinois*, 319 Ill. App. 3d 870, 877 (2001). Once a plaintiff has complied with the requirements, however, the Act should be liberally construed to accomplish its remedial purpose. *Westcon/Dillingham*, 319 Ill. App. 3d at 877.

With these principles in mind, we proceed to a consideration of the parties' arguments.

The Schwartzes argue that strict compliance with section 5 of the Act is required for the perfection of a valid subcontractor's mechanics lien and that service of a 90-day notice of lien under section 24 of the Act does not obviate a subcontractor's obligation to comply with the 60-day notice requirement of section 5(b)(ii). Further, the Schwartzes

argue that the plain language of section 5 of the Act demonstrates that the legislature did not intend to permit "substantial compliance" with its provisions. Thus, argue the Schwartzes, plaintiff's claim for lien is invalid as a matter of law for failing to provide the notice mandated by section 5(b)(ii) of the Act.

Plaintiff first argues that the written notice of its lien claim made pursuant to section 24(a) of the Act "substantially complied" with the requirements of section 5(b)(ii). Further, plaintiff argues, the Schwartzes failed to secure a sworn statement from Premier, thus failing to avail themselves of the protections afforded to them by section 5 of the Act. Finally, plaintiff argues that the Schwartzes failed to show prejudice under the provisions of section 5(b)(iii).

We find that a subcontractor's failure to serve the 60-day notice mandated by section 5(b)(ii) does not render its claim for lien invalid as a matter of law.

Our analysis of the issue presented in this case is guided by the Illinois Supreme Court's recent holding in *Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385 (2009). In *Weather-Tite*, our supreme court addressed the question of whether an owner has a duty to retain funds due a subcontractor as shown on the general contractor's sworn statement pursuant to section 5 of the Act. *Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 387 (2009). Admittedly, *Weather-Tite* dealt with an examination of only section 5(a) of the Act, as the case did not involve an owner-occupied single-family residence; however, the reasoning provided by the supreme court in reaching its conclusion is instructive.

In *Weather-Tite*, the University of St. Francis hired a general contractor for renovation of a residence hall. The general contractor then entered into a written contract with the plaintiff subcontractor to provide electrical labor, materials, and services for the renovation. On five occasions, the general contractor submitted sworn statements requesting payment from the University. After receipt of each of the first four sworn statements, the University paid the general contractor the total amount listed on each statement, including the amount due the plaintiff subcontractor, and the general contractor then paid the plaintiff subcontractor the amounts due as listed on the statements. The University wire transferred the fifth and final payment to the general contractor's bank account. At that time, the recipient bank exercised its right of setoff and applied the funds to an outstanding debt of the general contractor. Thus, the plaintiff subcontractor was not paid the final balance due for electrical work, totaling $130,948.48. *Weather-Tite, Inc.*, 233 Ill. 2d at 388.

Thereafter, the plaintiff subcontractor served notice of its claim for mechanics lien on the University for its work on the renovation. The University filed a motion for summary judgment, arguing that the plaintiff subcontractor did not have an enforceable mechanics lien. The plaintiff subcontractor filed a cross-motion for summary judgment. The trial court entered summary judgment in favor of the University and denied the plaintiff subcontractor's cross-motion. The appellate court reversed and remanded to the trial court for entry of an order granting the plaintiff subcontractor's motion for summary judgment. *Weather-Tite, Inc.*, 233 Ill. 2d at 388.

On review, the supreme court affirmed the appellate court's reversal of the trial court's granting of summary judgment in *Weather-Tite*. *Weather-Tite, Inc.*, 233 Ill. 2d at 389. On appeal to the supreme court, the University argued that according to section 5 of the Act, an owner may rely on the general contractor's sworn statement and pay the general contractor all funds due subcontractors. The plaintiff subcontractor argued that the general contractor's sworn statement provides the owner notice of subcontractor claims and imposes a duty on the owner to retain funds sufficient to pay subcontractor claims.

The supreme court began its analysis of the parties' arguments by noting that the purpose of the Act is to protect contractors and subcontractors providing labor and materials for the benefit of an owner's property. *Weather-Tite, Inc.*, 233 Ill. 2d at 391.

The supreme court then observed that section 5 of the Act explicitly states that the owner has a duty to require a contractor's sworn statement *"before"* paying the general contractor any moneys. The purpose served by this requirement, noted the supreme court, is to place the owner on notice of any subcontractor claims and to secure waivers of lien claims from the subcontractors when making payment to the general contractor. *Weather-Tite, Inc.*, 233 Ill. 2d at 390. The supreme court then examined the provisions of section 27 of the Act, which in relevant part provides as follows:

" 'When the owner or his agent is notified as provided in this Act, he shall retain from any money due or to become due the contractor, an amount sufficient to pay all demands that are or will become due the contractor, an amount sufficient to pay all demands that are or will become due such sub-contractor, tradesman, materialman, mechanic, or worker of whose claim he is notified, and shall pay over the same to the parties entitled thereto.

\* \* \*

\*\*\* Any payment made by the owner to the contractor after such notice, without retaining sufficient money to pay such claims, shall be considered illegal and made in violation of the rights of the

laborers and sub-contractors and the rights of such laborers and sub-contractors to a lien shall not be affected thereby, but the owner shall not be held liable to any laborer and sub-contractor or other person whose name is omitted from the statement provided for in Sections 5 and 22 of this Act ***.' " (Emphasis omitted.) *Weather-Tite, Inc.*, 233 Ill. 2d at 392, quoting 770 ILCS 60/27 (West 2004).

The supreme court found that section 27 applies to notice of a subcontractor's claim received as a result of a section 5 contractor's sworn statement. The court further found that an owner is required to retain funds sufficient to pay all claims of subcontractors when an owner is notified of amounts due or to become due a subcontractor, as included in a contractor's sworn statement under section 5. *Weather-Tite, Inc.*, 233 Ill. 2d at 392. The court found that its conclusion was also supported by section 32 of the Act, which provides:

" 'No payments to the contractor or to his order of any money or other considerations due or to become due to the contractor shall be regarded as rightfully made, as against the sub-contractor, laborer, or party furnishing labor or materials, if made by the owner without exercising and enforcing the rights and powers conferred upon him in sections 5, 21, and 22 of this Act.' " *Weather-Tite, Inc.*, 233 Ill. 2d at 392-93, quoting 770 ILCS 60/32 (West 2004).

Reading the Act as a whole, the supreme court found that the purpose of the contractor's sworn statement is to place the owner on notice of subcontractor claims and to create a duty upon the owner to protect the claims of the subcontractors named in the contractor's sworn statement. The supreme court further found that the legislature intended the "following orderly method of conducting construction transactions to protect subcontractor claims: (1) the owner and general contractor enter into a contract for the construction work; (2) as the work is completed, the general contractor submits a section 5 sworn affidavit that must list all subcontractors and the amount due, to become due, or advanced [to each subcontractor]; (3) when the section 5 sworn affidavit lists an amount due or to become due a subcontractor, section [27] requires the owner retain sufficient funds to pay the subcontractor; and (4) section 27 requires the owner to make subcontractor payments upon receiving notice of a subcontractor claim pursuant to a section 5 sworn statement." *Weather-Tite, Inc.*, 233 Ill. 2d at 393. Further, the supreme court noted that, a lien waiver can be provided to the general contractor when the subcontractor is paid, and the owner can require a lien waiver by every subcontractor when paying the contractor. *Weather-Tite, Inc.*, 233 Ill. 2d at 393.

After reviewing the holding in *Weather-Tite*, we find that the conclusion that a subcontractor's claim for mechanics lien for failure to comply with the notice requirement of section 5(b)(ii) does not render a claim for lien invalid as a matter of law becomes apparent. Reading the Act as a whole, the Act, including section 5, seeks to balance the interests of the owner and the interests of contractors and subcontractors who provide labor and materials for the benefit of an owner's property. Section 5(a) of the Act aims to protect the owner from having to pay twice for a subcontractor's work, by placing the owner on notice of any subcontractor claims by requiring the general contractor to provide, and requiring the owner to demand of the general contractor, a sworn statement listing all subcontractor claims. In the case of an owner-occupied single-family residence, section 5(b)(ii) offers the owner further protection, by requiring a subcontractor who has furnished labor or materials to provide notice of its work to the owner directly, within 60 days of its first furnishing labor or materials for the benefit of the owner's residence. After receiving notice of a subcontractor's claim, an owner can pay the general contractor, including the amount due a subcontractor; when doing so, the owner is to secure a lien waiver which can be provided to the general contractor when the subcontractor is paid. If the owner does not secure a lien waiver, section 27 requires the owner to retain sufficient funds from the general contractor for the benefit of the subcontractor.

As noted, section 5 of the Act was amended in 1975 to require that a subcontractor's notice be served upon the occupant of an existing owner-occupied single-family residence within 14 days (now 60 days). *Gary L. Brown Painting & Decorating, Ltd.*, 159 Ill. App. 3d at 749. The amendment was made to protect the homeowner of a single-family dwelling and to warn the homeowner to secure a waiver of lien from the subcontractor so that the homeowner would not be required to pay twice. *Gary L. Brown Painting & Decorating, Ltd.*, 159 Ill. App. 3d at 749. What is apparent is that the legislature did not intend for section 5(b)(ii) to be construed so technically that the Act's remedial purpose of protecting those who furnish labor or materials for the benefit of the owner is undermined. See *Walker Process Equipment v. Advance Mechanical Systems, Inc.*, 282 Ill. App. 3d 452, 456 (1996) (notwithstanding the strict construction generally given to all sections of the Act, there is authority that favors some flexibility in applying the general rules, so that the Act's purpose of providing a remedy to those providing labor and materials for the benefit of an owner's property is not undermined).

This conclusion is supported by section 5(b)(iii), which provides that "[a]ny notice given pursuant to [section 5(b)(ii)] after 60 days by

the subcontractor *** shall preserve his or her lien, but only to the extent that the owner has not been prejudiced by payments made before receipt of the notice." 770 ILCS 60/5(b)(iii) (West 2006).

It is clear that the legislature did not intend to provide the owner of an owner-occupied single-family residence with a windfall when a subcontractor fails to provide the 60-day notice provided for by section 5(b)(ii) of the Act. The strict interpretation advocated by the Schwartzes in the case at bar could permit the owner of an owner-occupied single-family residence to pay nothing for valuable services if a subcontractor fails to provide the notice required by section 5(b)(ii), even when the owner has not already paid the contractor for the subcontractor's services. The facts of this case, as thus far developed, are demonstrative of this unintended consequence if we were to construe section 5(b) as proposed by the Schwartzes. In the case at bar, plaintiff filed a two-count complaint, count I of which seeks to foreclose on plaintiff's subcontractor's mechanics lien. As noted, the Schwartzes filed a motion to dismiss count I of plaintiff's complaint, in lieu of an answer, based on plaintiff's undisputed failure to provide the notice required by section 5(b)(ii) of the Act. Plaintiff did however provide written notice of its lien claim pursuant to section 24(a) of the Act within 90 days after the "completion" of its work to the subject property. Neither the Schwartzes' motion to dismiss count I of plaintiff's complaint nor Marc Schwartz's affidavit attached to the motion to dismiss made any claim of prejudice, by claiming that the Schwartzes had already made payment to Premier for plaintiff's work, due to plaintiff's failure to provide the Schwartzes with section 5(b)(ii) notice. Considering that the purpose of the Act is to protect contractors and subcontractors providing labor and materials for the benefit of an owner's property, we cannot find that the legislature intended that a subcontractor's claim for mechanics lien is invalid as a matter of law when a subcontractor fails to provide notice of its agreement to provide materials or services as subcontractor within 60 days of its first furnishing of such materials or services as required by section 5(b)(ii) of the Act.

We note the Schwartzes' reliance on *Hill Behan Lumber Co. v. American National Bank & Trust Co. of Waukegan*, 101 Ill. App. 3d 268 (1981), a Second District Illinois Appellate Court decision where the court found that a plaintiff subcontractor's failure to provide a section 5(b)(ii) notice to the owner of an owner-occupied single-family residence rendered the plaintiff subcontractor's lien claim invalid. *Hill Behan* does not compel the strict construction of section 5 urged by the Schwartzes. In its opinion, the appellate court made no mention of whether the owners in *Hill Behan* had already made payment to the

general contractor and whether the owners were thus prejudiced by the plaintiff subcontractor's failure to provide a section 5(b)(ii) notice. *Hill Behan*, 101 Ill. App. 3d 268. Rather, the appellate court spent the vast majority of its opinion discussing the contested issue on appeal; namely, whether the owner's property was an owner-occupied single-family residence. *Hill Behan*, 101 Ill. App. 3d at 270.

Based upon the foregoing, we answer the narrowed certified question, whether a subcontractor's failure to serve a 60-day notice as provided in section 5(b)(ii) of the Act renders the subcontractor's claim for lien invalid as a matter of law, in the negative.

We now briefly address the propriety of the trial court's orders of December 2, 2008, and March 12, 2009, denying the Schwartzes' motion to dismiss count I of plaintiff's complaint and denying the Schwartzes' motion to reconsider that denial, respectively. As noted, the Schwartzes' motion to dismiss was brought pursuant to section 2—619(a)(9) of the Code (735 ILCS 5/2—619(a)(9) (West 2006)). Section 2—619(a)(9) allows for dismissal where the claim asserted is barred by affirmative matter avoiding the legal affect of or defeating the claim. 735 ILCS 5/2—619(a)(9) (West 2006). "The phrase 'affirmative matter' encompasses any defense other than a negation of the essential allegations of the plaintiff's cause of action." *Travis v. American Manufacturers Mutual Insurance Co.*, 335 Ill. App. 3d 1171, 1174 (2002). "Such a motion admits the legal sufficiency of the plaintiff's complaint but interposes some affirmative matter that prevents the lawsuit from going forward." *Travis*, 335 Ill. App. 3d at 1174. "On appeal from a ruling on a section 2—619(a)(9) motion, the standard of review is *de novo*." *Travis*, 335 Ill. App. 3d at 1174.

■ Having determined that plaintiff's claim for mechanics lien is not barred for having failed to provide notice pursuant to section 5(b)(ii) of the Act as a matter of law, the question becomes whether plaintiff's notice pursuant to section 24(a) of the Act substantially complies with the requirements of sections 5(b)(ii) and 5(b)(iii). As noted, section 5(b)(iii) provides that "[a]ny notice given pursuant to [section 5(b)(ii)] after 60 days by the subcontractor *** shall preserve his or her lien, but only to the extent that the owner has not been prejudiced by payments made before receipt of the notice." 770 ILCS 60/5(b)(iii) (West 2006). As noted, plaintiff's notice of lien claim under section 24(a), a copy of which is included in the record, describes the subject property, recites the balance due plaintiff under its subcontract with Premier, and is signed by plaintiff's "authorized agent." Plaintiff's section 24(a) notice accomplished the purpose which section 5(b)(ii) seeks; namely, notifying the owner of plaintiff's subcontract.

As a result of the early nature of the proceedings of this case, no record has been made regarding whether the Schwartzes were prejudiced by plaintiff's failure to serve the section 5(b)(ii) notice. At this stage in the proceedings we have no way to determine whether the Schwartzes have already paid Premier for the work performed by plaintiff. What is clear from the record before us is that no claim of prejudice is made in the Schwartzes' motion to dismiss, reply to plaintiff's response to the motion to dismiss, or in Marc Schwartz's affidavit which, as noted, is attached to the motion to dismiss. What is also clear from the record before us is that Marc Schwartz requested a contractor's sworn statement from Premier, but that he never received one. It has been held that the "owner's duty is to refrain from paying the contractor until the owner receives the [general contractor's] sworn statement." *Northwest Millwork Co. v. Komperda*, 338 Ill. App. 3d 997, 1001 (2003).

Based upon the record before it, the trial court properly denied the Schwartzes' motion to dismiss count I of plaintiff's complaint.

## CONCLUSION

For the foregoing reasons, we answer the narrowed certified question in the negative. We find that plaintiff's failure to serve a 60-day notice as provided in section 5(b)(ii) of the Act does not render plaintiff's claim for lien invalid as a matter of law. We further find that the trial court properly denied the Schwartzes' motion to dismiss count I of plaintiff's complaint based on the record before it.

Certified question answered; affirmed and remanded.

J. GORDON and McBRIDE, JJ., concur.