SECOND DIVISION

No. 1-09-3396

| | | |
|---|---|---|
| PARKWAY BANK AND TRUST COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| HASO MESELJEVIC, Individually; SAMEL | ) | |
| MESELJEVIC, Individually; ALBIN MESELJEVIC, | ) | |
| Individually; 1633 FARWELL AVE. LLC., an Illinois | ) | |
| Limited Liability Company; BENZ KITCHENS; THE | ) | No. 08 CH 32129 |
| BOARD OF MANAGERS OF 1633 FARWELL AVE. | ) | |
| LLC CONDOMINIUM; UNKNOWN OWNERS and | ) | |
| RECORD CLAIMANTS, | ) | |
| | ) | |
| Defendants and Counterdefendants | ) | |
| | ) | |
| (Beta Electric, Inc., | ) | Honorable |
| | ) | Darryl B. Simko, |
| Defendant and Counterplaintiff-Appellant). | ) | Judge Presiding. |

JUSTICE KARNEZIS delivered the opinion of the court:

Plaintiff Parkway Bank and Trust Company (Parkway) filed an action in chancery court for foreclosure of a construction mortgage and sale of the underlying real property. One of the defendants, Beta Electric, Inc. (Beta), filed a counterclaim asserting the priority of its mechanic's lien on the property over Parkway's mortgage. The court granted judgment on the pleadings to Parkway on the counterclaim and

denied Beta's motion for reconsideration. Beta argues the court (1) abused its discretion by striking Beta's untimely response to Parkway's motion for judgment, denying Beta's motion for approval of the late filing and excluding Beta from oral argument for its failure to strictly comply with the court's briefing schedule; and (2) erred in granting Parkway's motion for judgment on the pleadings on the basis that Beta was a subcontractor, not a contractor, under the Mechanics Lien Act (770 ILCS 60/1 *et seq.* (West 2008)) and had failed to properly perfect its lien. We affirm.

## Background

In 2006, Haso, Samel and Albin Meseljevic started development of a 40-unit commercial condominium project in Chicago. At some point, the Meseljevics incorporated the project as 1633 Farwell Ave. LLC. On April 11, 2006, Beta entered into a contract with Haso pursuant to which Beta would perform electrical work on the project. On May 8, 2006, Parkway entered into a construction mortgage contract with Haso and Samel, identified in the contract as "grantor[s]" and "borrower[s]." Parkway recorded the mortgage on May 11, 2006. The mortgage was modified and/or renewed several times, with 1633 Farwell Ave. LLC being added as a grantor/borrower in October 2007. On May 1, 2008, Parkway accepted a promissory note executed by all three Meseljevics and by Haso as "operating manager" of 1633 Farwell Ave. LLC. On August 5, 2008, Beta recorded a mechanic's lien against 16 of the condominium units after the Meseljevics failed to pay Beta $136,200 due for Beta's work on the project.[1]

---

[1] The Meseljevics apparently abandoned the project and went back to their

1-09-3396

On August 29, 2008, Parkway filed a verified mortgage foreclosure complaint naming as defendants the Meseljevics individually; 1633 Farwell Ave. LLC.; the board of managers of 1633 Farwell Ave. LLC.; Benz Kitchens; Beta; and unknown owners and record claimants. Parkway alleged the Meseljevics had not made any payments on the mortgage since April 2008. It requested a judgment of foreclosure on its construction mortgage secured by the promissory note, an order of possession and sale and an order terminating all defendants' rights to possession of the property.

On January 26, 2009, the court entered an order of default against all defendants and granted Parkway's motion for a judgment of foreclosure and sale. In March 2009, the court vacated the default judgment against Beta in order to allow Beta to assert the priority of its mechanic's lien over Parkway's mortgage. Beta then filed a verified answer to Parkway's complaint and a counterclaim against Parkway and the Meseljevics; 1633 Farwell Ave. LLC.; the board of managers of 1633 Farwell Ave. LLC.; Benz Kitchens; Beta; and unknown owners and record claimants. The counterclaim asserted Beta's lien had priority over any other interests, including Parkway's mortgage. It asked for a judgment against Parkway for the $136,200 lien amount, plus costs, and/or a judgment extinguishing the interest of any other necessary party to the extent sufficient to satisfy that amount.

On May 7, 2009, Parkway filed a motion for judgment on the pleadings on the counterclaim pursuant to section 2-615(e) of the Illinois Code of Civil Procedure (735

homeland, Bosnia and Herzegovina.

3

ILCS 5/2-615(e) (West 2008)). It argued, in relevant part, that Beta had not properly perfected its mechanic's lien and the lien, therefore, had no priority over the mortgage. The same day, the court entered a scheduling order setting June 4, 2009, as the due date for Beta's response to the motion. The scheduling order warned that "failure to file a timely written Response or Reply will be deemed a waiver of oral argument with respect to the Response or Reply." Beta filed its response on June 5, 2009, the day after the deadline, without prior leave of court. On June 17, 2009, Parkway filed a reply to the response and an objection to Beta's participation in oral argument regarding the motion. It asserted Beta waived oral argument when it filed its response late in violation of the scheduling order. On June 24, 2009, Beta filed a motion to approve late filing. The motion was not supported by an affidavit.

On June 26, 2009, after argument on Parkway's objection and Beta's motion to approve late filing, the court denied Beta's motion to approve late filing, struck Beta's response as untimely and barred Beta from participating in oral argument during the hearing on the motion for judgment on the pleadings. The court then heard argument by Parkway on its motion for judgment on the pleadings on the counterclaim and granted the motion. It found Beta's lien showed Beta was a subcontractor; Beta failed to perfect its lien because it did not give statutory notice of the lien to Parkway; and Parkway's mortgage was, therefore, prior to and superior to Beta's lien. The court reinstated the January 2009 default judgment entered against Beta.

On August 14, 2009, the court denied Beta's motion to reconsider. The court

granted Parkway's motion to confirm the sale and distribution of the unsold condominium units, those not released from the mortgage. The condominiums having sold at auction for less than the amount due Parkway under the mortgage, the court entered a deficiency judgment against the Meseljevics and 1633 West Farwell Ave. LLC. On November 6, 2009, it granted Parkway's emergency motion to modify the judgment in order to change the description of one of the condominium units listed in the previous order. On December 7, 2009, Beta filed its notice of appeal from the June 26, 2009; August 14, 2009; October 21, 2009; and November 6, 2009, orders.

## Analysis

### 1. Untimely Response

Beta argues that the court abused its discretion in denying Beta's motion for approval of its late-filed response to Parkway's motion for judgment on the pleadings, striking the response and barring Beta from participating in oral argument on the motion for judgment on the pleadings. The court's scheduling order required Beta to file its response to Parkway's motion for judgment on the pleadings on or before June 4, 2009. Beta filed its response on June 5, 2009, one day late, without first requesting an extension of time or leave of court to file the untimely response. Beta's procedural failure to obtain leave of court prior to filing its untimely response did not render the response a nullity. *Cedzid Co. v. Marriott International Inc.*, No. 1-09-1924, slip op. at 4 (September 20, 2010). Instead, although it was within the court's discretion to strike the untimely filing, it was also within the court's discretion to allow it. Once Parkway

objected to the untimely response, the court was required to exercise its discretion to determine whether it should grant Beta leave to file the untimely response. *Cedzid*, slip op. at 4.

Beta filed a "motion to approve late filing" of the response. Pursuant to Supreme Court Rule183:

> "[The] court, for good cause shown on motion after notice to the opposite party, may extend the time for filing any pleading or the doing of any act which is required by the rules to be done within a limited period, either before or after the expiration of the time." 134 Ill. 2d R. 183.

Rule 183 vests the circuit court with discretion to extend the time a party has to comply with a court-ordered or rule-imposed deadline, both before and after expiration of the filing deadline. *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 345-46 (2007), citing *Bright v. Dicke*, 166 Ill. 2d 204 (1995). However, the court's discretion to allow a late response pursuant to a Rule 183 motion " 'does not come into play under the rule unless the responding party can first show good cause for the extension.' " *Vision Point of Sale, Inc.*, 226 Ill. 2d at 344, quoting *Bright*, 166 Ill. 2d at 209. Accordingly, the court had the discretion to allow Beta's response to stand if Beta could show good cause for its noncompliance with the deadline. We will not reverse a court's decision to deny a motion for extension of time absent an abuse of the court's discretion. *Vision Point of Sale, Inc.*, 226 Ill. 2d at 353-54.

In order to demonstrate good cause under Rule 183, Beta had the burden to

demonstrate to the court "clear, objective reasons why it was unable to meet the deadline and why an extension of time should be granted." *Vision Point of Sale, Inc.*, 226 Ill. 2d at 348. In its motion for approval of late filing, Beta provided no reason for why it filed the response late. Instead, it merely stated, without explanation, that its counsel's "office was unable to file [the] response until" the day following the deadline. It also stated that its counsel called Parkway's counsel and told him the response would be late and, if Parkway's counsel intended to object, Beta would seek leave of court to approve the late filing. Beta asserted Parkway's counsel told him he would not object but the court might not allow Beta to participate in oral argument.[2]

Putting aside the fact that Beta's motion was unsupported by affidavit, it is clear that the court had no basis on which to approve the late response. Beta's motion presented no cause for its late filing, let alone a good cause. "[I]n determining whether good cause exists under Rule 183 for the grant of an extension of time to remedy an

---

[2] At the hearing on the motion, Parkway's counsel vehemently denied Beta's version of the conversation. He told the court he had initiated the phone call, calling Beta's counsel after the deadline expired in order to inquire about the response because he needed it to prepare his reply. When he informed Beta's counsel the response was past due, Beta's counsel told him it would be filed late. Parkway's counsel asserted he never consented to the late filing. The court correctly noted that it was up to the court and not counsel to approve a late filing.

unintentional noncompliance with a [timing] requirement, the circuit court may not take into consideration facts and circumstances of record that go beyond the reason for noncompliance." *Vision Point of Sale, Inc.*, 226 Ill. 2d at 353. Beta's alleged discussion with Parkway's counsel is irrelevant to the issue of whether Beta had good cause to miss the deadline. It might explain why Beta did not file a motion for extension of time sooner, but that is not relevant to why Beta missed the deadline in the first place. Because Beta offered no explanation of why it was unable to comply with the deadline, it failed to satisfy the good-cause requirement for relief under Rule 183. *Bright*, 166 Ill. 2d at 209. The court did not err in denying Beta's motion for approval of the late filing.

Beta asserts the court denied its motion to approve the late filing without any inquiry into Beta's reasons for filing its response a day late, *i.e.*, without considering whether Beta presented a good-cause reason for missing the deadline. The report of proceedings on the motion bears out Beta's assertion that the court did not examine whether Beta had good-cause for its late filing before it denied the motion. Instead, the court appears to have denied the motion on the basis that Beta did not file the motion before expiration of the June 4 pleading deadline. Under Rule 183, a motion for extension of time to file a pleading may be granted "either before or after the expiration of the time [for filing a pleading]." 134 Ill. 2d R. 183. Accordingly, it would be error to deny the motion solely on the basis that it was filed after the expiration of the court's deadline.

However, as stated above, the record also clearly shows that Beta did not

present the court with an adequate motion for its consideration of whether an extension should be granted for good cause. The motion for approval of late filing was unsupported by affidavit and presented absolutely no reason for missing the deadline. The court would have been unable to perform a good-faith analysis on the basis of that motion even if it had wanted to. It was not up to the court to ask why Beta missed the deadline and ferret out a possible good cause. This was Beta's burden to prove. The court did not abuse its discretion in denying Beta's motion for approval of late filing of the response and in striking Beta's untimely response filed without leave of court.

Similarly, the court did not abuse its discretion in barring Beta from participating in oral argument regarding the judgment on the pleadings. Oral argument in a civil proceeding tried, as here, by the court without a jury is a privilege, not a right, and is accorded to the parties by the court in its discretion. *Korbelik v. Staschke*, 232 Ill. App. 3d 114, 118-19 (1992). The scheduling order warned the parties that "failure to file a timely written Response or Reply will be deemed a waiver of oral argument with respect to the Response or Reply." Beta was on notice of the consequences of filing late but filed late anyway, without leave of court. As the court told Beta, documents cannot be filed outside filing deadlines without leave of court and it had entered the scheduling order "just for this sort of eventuality." It explained that, on Parkway's objection, it had barred Beta from oral argument because Beta waived argument when it filed the response late in violation of the court's scheduling order. The circuit court has the inherent authority to enforce its own orders. *County of Cook v. Illinois Fraternal Order*

9

*of Police Labor Council*, 358 Ill. App. 3d 667, 671 (2005). It did not abuse its discretion in enforcing its order here.

2. Judgment on the Pleadings

A. Standard of Review

Beta argues the court erred in entering judgment on the pleadings in favor of Parkway because the court incorrectly found Beta was a subcontractor rather than a contractor under the Mechanics Lien Act. Beta asserts the court, as a result, incorrectly concluded Beta did not properly perfect its mechanic's lien and could not establish the priority of its lien over Parkway's mortgage. Judgment on the pleadings is proper where the pleadings disclose no genuine issue of material fact and the movant is entitled to judgment as a matter of law, *i.e.*, similar to a motion for summary judgment but limited to the pleadings. *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 385 (2005); *Intersport, Inc. v. National Collegiate Athletic Ass'n*, 381 Ill. App. 3d 312, 318 (2008).

In ruling on a motion for judgment on the pleadings, the court must consider only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record. *Gillen*, 215 Ill. 2d at 385. When a party moves for judgment on the pleadings pursuant to section 2-615(e), it concedes the truth of the well-pled facts in the respondent's pleadings. *McCall v. Devine*, 334 Ill. App. 3d 192, 198 (2002). The court deciding the motion must take all reasonable inference from those facts as true, disregard all conclusory allegations and surplusage and construe

the evidence strictly against the movant. *McCall*, 334 Ill. App. 3d at 198; *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 385 (2005). We review a circuit court's order granting judgment on the pleadings *de novo. McCall*, 334 Ill. App. 3d at 198.

### B. Preliminary Matters

Before we turn to the question of whether the court erred in granting the judgment on the pleadings, we must consider three preliminary matters: (i) Parkway's assertion that Beta waived its objection on appeal to the motion for judgment on the pleadings because it did not preserve its arguments below; (ii) Beta's assertion that the court could not decide the motion for judgment on the pleadings without the response; and (iii) Beta's assertion that the court granted the judgment on the pleadings or a default judgment against Beta merely because Beta did not file a timely response.

### (i) Waiver

Parkway asserts Beta waived its objection on appeal to Parkway's motion for judgment on the pleadings by its failure to preserve its arguments below. There is no question that preservation of a question for review requires an appropriate objection below and that a failure to object constitutes a waiver of the issue on review. *People v. Jones*, 364 Ill. App. 3d 740, 748 (2006). But it is not the case that Beta failed to object to Parkway's motion. Rather, it did object but its objection was stricken as untimely. Following the reasoning of *In re Marriage of Fahy*, 208 Ill. App. 3d 677 (1991), we find Beta's failure to file a response within the time allowed for that response served to

11

waive its right to file that response, but not its objection to or right to contest the motion.

In *Marriage of Fahy*, the domestic relations court had entered a default judgment against the respondent because the respondent's written responses to assorted motions were untimely and the court considered them as tantamount to no responses at all. The appellate court found no authority allowing a trial court to find a party in default and to enter judgment against him based on such default for the "simple failure" of a party to file a response where the party appeared before the court on the date set for hearing on the motion. *Marriage of Fahy*, 208 Ill. App. 3d at 685. The court found the only authority of any relevance to be Cook County Circuit Court Rule 2.1(d) (Cook Co. Cir. Ct. R. 2.1(d)), which relates to motion practice in the law division. *Marriage of Fahy*, 208 Ill. App. 3d at 685. Rule 2.1(d) provides that " '[f]ailure to file a supporting or answering memorandum shall not be deemed to be a waiver of the motion, or a withdrawal of opposition thereto, but shall be deemed a waiver of the right to file the respective memorandum.' " *Marriage of Fahy*, 208 Ill. App. 3d at 685, quoting Cook Co. Cir. Ct. R. 2.1(d). As the *Marriage of Fahy* court explained, under Rule 2.1(d), "failure to file a written response to a motion within the time allowed therefor does not waive the right to contest the merits of the motion but merely the right to file a response thereafter. As such, it does not allow the entry of a default judgment on the motion due to such a failure." *Marriage of Fahy*, 208 Ill. App. 3d at 685. Although Rule 2.1(d) applies to the law division, the court could "imagine no reason why it should not also apply in the other divisions of the court." *Marriage of Fahy*, 208 Ill. App. 3d at 685-86.

12

Rule 2.1(d) was promulgated to apply to motion practice in the law division and, therefore, it does not apply in this chancery case. We could find no similar rule relevant to the chancery division. However, as did the *Fahy* court, we will apply the precepts of Rule 2.1(d) in this case. To hold otherwise would mean that where, as here, a party appears at a hearing ready to object to a motion but its written objection to the motion is stricken as untimely and its verbal objection is barred, the party would be considered to have raised no objection at all, leading to entry of a default judgment against it at trial and waiver of the question on appeal. This is a drastic result, unwarranted by the circumstances given that the party, as the court here recognized, is clearly objecting to the motion. This determination is reinforced by the fact that, as the chancery court noted, although a court benefits from fully briefed motions, and sometimes from oral argument, a motion for judgment on the pleadings only requires that the court consider the motion, the underlying pleadings and exhibits attached to the pleadings.

(ii) Response Required

Beta asserts that the court could not properly decide the section 2-615(e) motion for judgment on the pleadings without the benefit of a response of some sort. A response to a motion for judgment on the pleadings is not necessary to a court's disposition of the motion. The sole issue raised by a section 2-615(e) motion is whether the complaint or counterclaim, when read in light of the respondent's answer, raises material questions of fact as to the existence of a cause of action. *Petrik v. Monarch Printing Corp.*, 150 Ill. App. 3d 248, 257 (1986). The court, therefore, would

13

ordinarily consider only the complaint and attachments thereto, the answer and the motion for judgment. *Petrik*, 150 Ill. App. 3d at 257.

The court considered Beta's counterclaim with attached exhibit (the mechanic's lien); Parkway's complaint with attached exhibits, on which the court had allowed Parkway leave to stand as its answer to the counterclaim; and Parkway's motion for judgment on the pleadings. The court had everything it needed to decide the merits of the motion for judgment on the pleadings.

### (iii) Improper Default Judgment

Beta asserts that the court entered the judgment on the pleadings against Beta or a default judgment against Beta for Beta's "simple failure" to file a response. As the court explained to Beta during the hearing on Beta's motion to reconsider, it did not rule Beta was defaulted on the motion. Rather, it "simply ruled on the merits of the motion without [Beta's] response" and "the failure to file a response [did not] mean [Parkway won]." The court stated it granted the motion because it was a "good" and "correct" motion, not because Beta did not file a response. It subsequently clarified that its basis for granting judgment on the pleadings was that the lien was defective and never attached to the property. The court had originally vacated the default judgment against Beta in order to allow Beta to file a counterclaim. As the court explained in response to Beta's request for clarification, it had reinstated the default judgment in order to reflect the dismissal of the counterclaim pursuant to the judgment on the pleadings. The extensive discussion between the court and Beta's counsel shows the court did not

enter judgment on the pleadings in favor of Parkway or a default judgment against Beta merely because Beta filed no response.

### C. Grant of Judgment of the Pleadings

Looking now to the question of whether the court erred in granting the motion for judgment on the pleadings on the counterclaim, we find the court properly granted the motion. Beta's verified counterclaim asserted that, on April 11, 2006, Haso owned fee simple title to the real property underlying the condominium project; Beta entered into the electrical work contract with Haso on that date; all Beta's work was performed with the knowledge and consent of property owner Haso, or of Samel or Albin with Haso's knowledge; Beta substantially completed the work on April 8, 2008; it was owed $136,2000 under the contract as of that date; it recorded its mechanic's lien in that amount against 16 of the units[3] on August 5, 2008; "a mechanic's lien attaches and exists from the date of the contract between the owner and the contractor"; Parkway recorded its mortgage against the property after April 11, 2006 (the date of Beta's contract with Haso); a properly perfected lien based on an original contract predating recording of a mortgage has absolute priority over the mortgage; and Beta's lien, therefore, had absolute priority over Parkway's mortgage. Beta requested a judgment against Parkway for $136,200 plus costs and/or extinguishment of the interest of any necessary party to the extent sufficient to satisfy the amount of the lien plus costs or

---

[3] The counterclaim states the lien was filed against 15 units but a count of the listed units show the total to be 16.

any other relief the court deemed appropriate. The counterclaim was verified by an affidavit signed by Beta's president stating the statements in the claim were true and correct.

Beta attached to the counterclaim a copy of the mechanic's lien and of the contract with Haso. The contract showed Haso executed the agreement and authorized Beta to perform the proposed electrical work. A rider to the contract identified Haso as "customer." The lien identified Beta as the "claimant" filing its claim for mechanic's lien against the interest in the real estate held by "1633 Farwell Ave, LLC ('Owner') and, Haso Meseljevic and Samel Meseljevic (collectively, 'Contractor') or any other person claiming an interest in the real estate by, through, or under Owner."

The lien stated "owner", *i.e.*, 1633 Farwell Ave. LLC, owned fee simple title to the real estate on April 11, 2006; Beta "made a contract dated April 11, 2006, with Contractor, as agent for and on behalf of Owner," for the provision of electrical services; "[t]he contract was entered into by Contractor, as agent for Owner"; Beta had fulfilled its obligations under the contract plus provided additional materials "requested, or otherwise knowingly permitted, by Contractor, as agent for Owner"; Beta completed the last substantial work on the property on April 8, 2008; and Beta was still owed $136,200 for its work.

The lien listed the 16 condominium units and allotted the balance due for work on each. A "legal description" attached to the lien identified the property as "Unit 1643N-B in 1633 Farwell Avenue condominium as delineated on a survey of the

16

following described real estate" and followed with the survey description of the property. The lien was verified by an affidavit signed by Beta's president stating he was authorized to sign the verification "to the foregoing original contractor's claim for mechanic's lien," had read "the original contractor's claim for mechanics lien" and verified the statements therein were correct.

Parkway's motion for judgment on the pleadings filed against the counterclaim argued Beta's counterclaim and lien showed Beta did not properly perfect its lien against Parkway and its lien, therefore, had no priority over Parkway's mortgage. It asserted the lien was defective because (a) it was a subcontractor's claim for lien and Beta had not provided Parkway with the 90-day notice required of subcontractors under Section 24(a) of the Mechanics Lien Act (770 ILCS 60/24(a) (West 2008)); and (b) the property described in the lien's legal description, unit 1643N-B, was not the same property to which Parkway's mortgage attached and, moreover, was not owned by 1633 Farwell Ave. LLC when Beta filed its lien because it had already been sold to another owner. The court found Beta did not properly perfect its lien and we agree.

The purpose of the Mechanics Lien Act is to protect contractors and subcontractors who are providing labor and materials for the benefit of an owner's property by permitting them a lien on the property. *Crawford Supply Co. v. Schwartz*, 396 Ill. App. 3d 111, 119 (2009). Because the rights under the Act are in derogation of common law, the steps necessary to invoke those rights must be strictly construed. *Crawford Supply Co.*, 396 Ill. App. 3d at 119. However, once the contractor or

subcontractor has strictly complied with the requirements and the lien has properly attached, then the Act should be liberally construed to accomplish its remedial purpose. *Crawford Supply Co.*, 396 Ill. App. 3d at 119; *Petroline Co. v. Advanced Environmental Contractors, Inc.*, 305 Ill. App. 3d 234, 239 (1999).

To prefect a mechanic's lien claim, section 24(a) of the Act requires a subcontractor to send or serve a notice of its lien claim within 90 days after "completion" of its work to any lending agency, "if known." 770 ILCS 60/24(a) (West 2008); *Petroline Co.*, 305 Ill. App. 3d at 238. The phrase "if known" is deemed to mean " 'if discoverable by the subcontractor through searching title recording records.' " *Petroline Co.*, 305 Ill. App. 3d at 238, quoting *Hill Behan Lumber Co. v. Irving Federal Savings & Loan Ass'n*, 121 Ill. App. 3d 511, 514 (1984). A subcontractor is held to have constructive knowledge of a lender/mortgagee whose interest is properly recorded. *Petroline Co.*, 305 Ill. App. 3d at 238. Compliance with this notice requirement is a condition precedent to the subcontractor's cause of action on the lien. *Cordeck Sales, Inc. v. Construction Systems, Inc.*, 382 Ill. App. 3d 334, 389 (2008). If the subcontractor does not provide a known lender with the mandated section 24 notice, the lien is unenforceable against the lender. *Petroline Co.*, 305 Ill. App. 3d at 241; *Hill Behan Lumber*, 121 Ill. App. 3d at 518. A contractor is not subject to this 90-day notice requirement. *Petroline Co.,* 305 Ill. App. 3d at 238.

Parkway was a "known" lender to Beta. The exhibits attached to Parkway's complaint, which stands as its answer to Beta's counterclaim, show Parkway is the

18

mortgagee of the property. The filing dates in assorted exhibits show Parkway recorded its mortgage on May 11, 2006, two years before Beta completed its work on the project on April 8, 2008, or filed its lien on August 5, 2008. The counterclaim raises no issue regarding whether the mortgage was properly recorded, so we assume that it was and, thus, readily discoverable by Beta. There is no question that Beta did not provide Parkway with notice of its lien. Therefore, if Beta is a subcontractor, its failure to notify Parkway of the lien would be fatal to its lien claim against Parkway.

The Act's definition of contractor is as follows:

"Any person who shall *by any contract* or contracts, express or implied, or partly expressed or implied, *with the owner* of a lot or tract of land, or with one whom the owner has authorized or knowingly permitted to contract, to improve the lot or tract of land or for the purpose of improving the tract of land, or to manage a structure under construction thereon, *is known under this Act as a contractor* and has a lien ***." (Emphasis added.) 770 ILCS 60/1(a) (West 2008).

The Act defines a subcontractor as follows:

"every mechanic, worker or other person *who shall furnish* any labor, services, material, fixtures, apparatus or machinery, forms or form work *for the contractor*, or shall furnish any material to be employed in the process of construction as a means for assisting in the erection of the building or improvement in what is commonly termed form or form work where concrete,

19

cement or like material is used in whole or in part, *shall be known under this Act as a sub-contractor*, and shall have a lien." 770 ILCS 60/21(a) (West 2008).

The counterclaim does not identify Beta as either a contractor or subcontractor. But, even if it did, such would be a legal conclusion the court must disregard. The counterclaim does state that Beta entered into the contract with Haso as "owner" of the real estate. Arguably, therefore, by entering into a contract directly with the owner, Beta was a contractor rather than a subcontractor subject to the section 24 notice requirement. However, the contract itself does not identify Haso as the owner, only as "customer," and there is no exhibit showing Haso was actually the owner of the property. In contrast, the lien identifies 1633 Farwell Ave. LLC as "owner" and Haso and Samel Meseljevic collectively as "contractor." It states Beta entered into the contract with "Contractor, as agent for and on behalf of Owner," and performed additional work as "requested, or otherwise knowingly permitted by Contractor, as agent for Owner." On its face, the lien states that Haso was a contractor acting on behalf of the owner. This would necessarily mean Haso is (a) a contractor and (b) not the owner. If Beta entered in the contract with the "contractor" and performed work at the behest of the "contractor," this leads to the conclusion that Beta was not itself a contractor but a subcontractor.

Beta was required to attach to its counterclaim the written instruments on which its claim was based. 735 ILCS 5/2-606 (West 2008)*; Gore v. Indiana Insurance Co.*, 376 Ill. App. 3d 282, 288 (2007), following *Bajwa v. Metropolitan Life Insurance Co.*,

20

208 Ill. 2d 414, 431 (2004). Beta's claim is based on the lien and the contract with Haso and it attached those exhibits to its counterclaim. Such exhibits are treated as part of the counterclaim itself. *Gore*, 376 Ill. App. 3d at 288; *Bajwa*, 208 Ill. 2d at 431. However, the allegations in the counterclaim regarding who owned the property, who Beta contracted with and who Beta was actually working for conflict with what Beta swore to in the lien. The counterclaim asserts the contract was with owner Haso while the lien says it was with contractor Haso for owner 1633 Farwell Ave. LLC.

If there is a conflict between the allegations in the counterclaim and the written exhibits, the exhibits will control and the allegations will not be taken as true in evaluating the sufficiency of the counterclaim. *Gore*, 376 Ill. App. 3d at 288, citing *Bajwa*, 208 Ill. 2d at 431-32, and *Crerar Clinch Coal Co. v. Board of Education*, 13 Ill. App. 2d 208, 217 (1957). Therefore, taking the lien as true and disregarding the conflicting allegations in the counterclaim, we find Beta contracted with and performed work for Haso, a contractor, and not directly for the owner of the property. This means Beta is a subcontractor under the definitions in sections 1 and 21 of the Act and should have provided notice of its lien to Parkway under section 24 and its lien is invalid against Parkway. The court did not err in granting judgment on the pleadings in favor of Parkway on the counterclaim.

For the reasons stated above, we affirm the decision of the circuit court.

Affirmed.

CUNNINGHAM, P.J., and CONNORS, J., concur.

1-09-3396

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT
(Front Sheet to be Attached to Each case)

PARKWAY BANK AND TRUST COMPANY,

    Plaintiff and Counterdefendant-Appellee,

v.

HASO MESELJEVIC, Individually; SAMEL MESELJEVIC, Individually; ALBIN
MESELJEVIC, Individually; 1633 FARWELL AVE. LLC., an Illinois Limited Liability
Company; BENZ KITCHENS; THE BOARD OF MANAGERS OF 1633 FARWELL AVE.
LLC  CONDOMINIUM; UNKNOWN OWNERS and RECORD CLAIMANTS,

    Defendants and Counterdefendants

(Beta Electric, Inc., Defendant and Counterplaintiff-Appellant).

No. 1-09-3396

Appellate Court of Illinois
First District, Second Division

December 7, 2010

JUSTICE KARNEZIS delivered the opinion of the court.

CUNNINGHAM, P.J., and CONNORS, J., concur.

Appeal from the Circuit Court of Cook County.

The Honorable Darryl B. Simko, Judge Presiding.

For APPELLANT:  Law Offices of Andjelko Galic, of Chicago (Andjelko Galic, of
counsel)

1-09-3396


For APPELLEE:  Scott & Kraus, LLC, of Chicago (Eugene S. Kraus, Jason R. Sleezer and Blair W. Lazarus, of counsel)